### State of Vermont v. Thomas Hendricks

[787 A.2d 1270]

No. 00-205

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed November 16, 2001

*Dan M. Davis*, Windham County State's Attorney, and *Tracy Kelly Shriver*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*William E. Kraham*, Brattleboro, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Thomas Hendricks appeals a jury conviction for second degree domestic assault. Defendant claims that the trial court erred in: (1) rejecting the plea agreement; (2) taking judicial notice of family court proceedings between defendant and the victim; (3) admitting prior bad acts evidence involving the same victim; (4) permitting the jurors to take notes; and (5) issuing jury instructions. Defendant also claims the trial court failed to give him

credit for time spent in custody. We affirm with respect to all claims except the last which is moot.[1]

This case arises out of a lengthy and volatile relationship between defendant and Michele Lee (Ms. Lee or the victim), defendant's former girlfriend of fourteen years. Defendant and Ms. Lee cohabitated, worked together and had two children. On January 25, 1999, during an argument, Ms. Lee claimed that defendant grabbed her by the throat and banged her head against the wall. She stated that when she fought back, defendant pushed her into the floor, and that when he let her go, she kicked him in the groin. Ms. Lee left the residence, but returned later to pick up medication and clothing. When she returned, she stated that defendant knocked her down to the ground and choked her. A police officer who interviewed Ms. Lee at the hospital emergency room noted that she was "visibly upset," and that she had bruises on her neck and numerous abrasions on the right corner of her mouth and on the right side of her back.

Defendant's son told the police officer that he had observed the couple fighting, and that he had intervened to separate them. Defendant, however, stated that Ms. Lee had kicked him in the groin, bit his finger and hit him in the head, and that he had merely pushed her away in self-defense. Defendant had "a small laceration to the left pinky finger and a lump on the top left side of the head."

The day after the alleged assault, defendant was arraigned on a charge of second degree aggravated domestic assault, in violation of 13 V.S.A. § 1044(a)(2).[2] In April 1999, while the case was pending, defendant was arraigned on new charges, including one felony count violation of an abuse prevention order, and two misdemeanor counts for violating his conditions of release. Defendant initiated contact with Ms. Lee by sending her a thank you card.

On September 15, 1999, pursuant to a plea agreement, defendant entered a guilty plea to the felony charge for violating the relief from abuse order, and to one misdemeanor count for violating his conditions of release. The State agreed to dismiss the aggravated domestic assault charge and the second misdemeanor charge of

---

[1] At oral argument, the State conceded that the trial court had failed to award defendant credit for time served to which he was entitled pursuant to 13 V.S.A. § 7031(b), and subsequently the parties entered into a stipulation in which defendant was awarded appropriate credit.

[2] Defendant had a prior domestic assault conviction, entered in November 1993, and two convictions for violation of an abuse prevention order, in 1993 and 1994, incidents all involving Ms. Lee.

violation of conditions of release. The State also agreed to recommend a sentence of eighteen to forty-two months, all suspended except sixty days. Under the agreement, defendant would, at sentencing, be free to argue for a lesser sentence.

On September 24, prior to the sentencing hearing, defendant was charged with three felony violations of the abuse prevention order and one violation of conditions of release. On September 15, defendant had approached Ms. Lee outside of family court. The following day, the rear window of Ms. Lee's friend's automobile was smashed while he was visiting her at her home. Although there is no evidence that defendant smashed the window, the next day defendant approached Ms. Lee at her home and said, "Thank you for leaving your shades up so I know that he wasn't there." Defendant subsequently contacted Ms. Lee by telephone on more than one occasion, sent her flowers and a marriage application, and approached her at her home several times.

At the October 1 sentencing hearing, the State attempted to rescind its plea agreement. Defendant argued that the State and the court were bound by the terms of the September 15th agreement. The court refused to allow the State to withdraw from the plea agreement, but noted, "I haven't accepted the plea agreement yet. I took [defendant's] plea, deferred acceptance of the agreement and sentencing until we had the hearing." The court also informed defendant, prior to the start of the hearing, that it had taken judicial notice of family court files concerning defendant and the victim. At the conclusion of the hearing at which both defendant and the victim testified, the court rejected the plea agreement. The court gave defendant the opportunity to withdraw his plea, which he chose to do, and the aggravated domestic assault charge was set for trial.

At trial, the court issued preliminary instructions to the jury on the essential elements of the offense, and instructed them on their ability to take notes during the course of the trial. Defense counsel did not object to either charge. The court provided jurors with pads and pencils, permitted the jurors to take notes and use them during deliberations. The court asked the jurors to destroy these notes after trial.

Following a one-day trial, at which the jury heard testimony from a police officer, the victim, defendant, defendant's son and a neighbor, defendant was found guilty of second degree domestic assault.

## I.

Defendant first contends that he is entitled to specific performance of the plea agreement under V.R.Cr.P. 11. Criminal Rule 11(e)(2) provides:

> [T]he court, before entry of the plea, may accept or reject the agreement, or defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report. The plea agreement shall not be binding upon the court nor shall it limit the court in the judgment and sentence to be imposed unless the court accepts the plea agreement under subdivision (e)(3) of this rule.

Rule 11(e)(3) requires the court, upon accepting the plea, to "inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or a less onerous disposition." V.R.Cr.P. 11(e)(3). The next subsection provides that:

> If the court rejects the plea agreement or defers decision upon it, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is or may not be bound by the plea agreement, pursuant to Rule 32(d) afford a defendant who has already pleaded the opportunity to then withdraw his plea . . . .

V.R.Cr.P. 11(e)(4).

Defendant contends that the court accepted the plea agreement at the September 15th hearing. However, the court, after finding the pleas to be knowing and voluntary, stopped short of accepting and entering judgment on them. Defendant cites to the court comment that the State's sentence recommendation is "the worst that could happen to you at the sentencing hearing," in order to establish that the pleas were accepted. However, the court also stated "[t]his isn't settled until we come back and do the sentencing," and thereby clearly deferred acceptance pending a sentencing hearing.

We have previously rejected the argument that acceptance of the plea agreement must be presumed unless the court explicitly rejects the agreement or defers its decision. *State v. Delisle*, 162 Vt. 293, 300, 648 A.2d 632, 641 (1994). While we reiterate that it is "better practice" for the court — when it intends to defer a decision as to rejection or acceptance of a plea agreement until there has been an

opportunity to consider the presentence report — to explicitly say so, we have not always required courts to follow subdivision 11(e)(4) to the letter. See e.g., *id.* On the basis of this record, we cannot find that the court accepted the plea agreement, nor will we presume, as a matter of law, that it did. Accordingly, we reject defendant's assertion that he is entitled to specific performance of a plea agreement that the court did not accept.

## II.

Defendant next contends that the trial court erred because, prior to sentencing, it reviewed family court files concerning defendant and the victim, "without prior notice to the parties." Defendant's claim is premised on an inaccurate factual representation. In fact, the court specifically advised the State and defendant that it would be reviewing relevant family court files prior to sentencing. The court stated,

> [y]ou should also know . . . I've also called for the Family Court files up here so I'd have a chance to look at those records . . . . the rule requires that you know whatever it is I'm looking at . . . . you may want to take a look at this, unless you're aware of what's in there. . . . If you do want to take a look at them, and then because of what's in there you want more time, you can tell me that too.

Defendant concedes that he neither accepted the court's invitation to take the time to review the materials, nor objected to the court's review of them. Because defendant failed to object, he must demonstrate that the court committed plain error in order to prevail. V.R.Cr.P. 52(b); *State v. Forant*, 168 Vt. 217, 219, 719 A.2d 399, 401 (1998). "Plain error will be found only in rare and extraordinary cases where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." *State v. Streich*, 163 Vt. 331, 353, 658 A.2d 38, 53 (1995).

Defendant's plain error theory apparently rests on the assumption that the court's review of the family court files caused it to reject a plea agreement that it was otherwise bound to accept. Even if we assume review of the family court files was error, it cannot plausibly be maintained that the error was "plain" where the court was not bound to accept the plea agreement in the first instance. Moreover, there was ample evidence, apart from the family

court records — including the victim's testimony, defendant's criminal record, and the fact that he was charged with felony violation of an abuse prevention order and violation of his conditions of release between the plea and sentencing hearings — to support the court's decision to reject the plea agreement. Defendant's claim of plain error is without merit.

## III.

### A. Bad Acts Evidence

Defendant next claims that the court erred in admitting prior bad acts evidence that should have been proscribed under V.R.E. 404(b) and 403. "We will reverse the trial court's decision to admit this evidence only if the court withheld or abused its discretion . . . and a substantial right of defendant was affected by the alleged error." *State v. Kelley*, 163 Vt. 325, 328, 664 A.2d 708, 710 (1995).

Prior to trial, the State gave notice to defendant of its intent to utilize prior bad act evidence pursuant to V.R.E. 404(b). Specifically, the State sought to use two previous incidents of physical violence between defendant and the same victim. One incident (the 1993 assault) resulted in defendant's conviction, and satisfied one element of the current charge under 13 V.S.A. § 1044(a)(2), requiring a prior domestic assault conviction. The second incident (the 1997 assault) constituted uncharged misconduct alleging that defendant assaulted the victim in front of their daughters by beating her head into the ground. The State asserted that the evidence of defendant's prior bad acts of domestic violence was admissible to show the context in which the violence between defendant and Ms. Lee took place, and as a response to defendant's anticipated claims of self-defense and accidental injury. Defendant filed a motion in limine to bar the use of the uncharged misconduct evidence. While conceding that "[t]here will be a defense that approaches a self-defense concept," defendant claimed the introduction of prior uncharged misconduct evidence would impermissibly establish that defendant had a propensity for assaultive conduct. Prior to the start of trial on November 4, 1999, the court heard argument from the parties on defendant's motion in limine, and denied defendant's motion, thus permitting the State to introduce evidence of the 1993 and 1997 incidents.[3]

---

[3] Defendant stipulated to the 1993 conviction of domestic assault but sought to bar testimony about the facts.

. In denying defendant's motion, the trial court explained, "I think those two prior incidents, aside from the fact one is really an element of the crime, the conviction itself, but more than the conviction the facts as described to me now . . . are admissible under *Sanders* for context purposes." We agree. In *State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11, 13 (1998), we held that prior domestic assaults may be properly admitted to give context to a domestic violence charge because "[a]llegations of a single act of domestic violence, taken out of its situational context, are likely to seem incongruous and incredible to a jury." (internal citations omitted).

This case presents exactly the circumstances to which the reasoning of *Sanders* applies. The jury was presented with a single act of domestic violence. Defendant asserted that his actions during the incident were in self-defense, and that injuries to the victim occurred either in defending himself or as a result of the victim's previous accidental fall.

In reviewing the trial court's admission of evidence under Rule 404(b), we must determine whether the evidence was relevant and material to the action. *Sanders*, 168 Vt. at 62, 716 A.2d at 13. Here the introduction of two prior instances of defendant's abuse of the same victim was not to show defendant's propensity to commit such abuse, but rather, "to provide the jury with an understanding of defendant's actions on the date in question." *Id.*

Upon deciding the evidence of prior bad acts is relevant and material, we must then determine whether the trial court abused its discretion in deciding that the introduction of such evidence was more probative than prejudicial under V.R.E. 403. Although "[e]vidence tending to inculpate the defendant always carries with it some prejudice," *Kelley*, 163 Vt. at 329, 664 A.2d at 711, the trial court did not abuse its discretion by deciding that the evidence in question was more probative than prejudicial.

### B. Bad Acts Instruction

Defendant also claims that the court did not give a proper limiting instruction regarding the prior bad acts. Specifically, defendant contends that the court did not properly instruct the jury: (1) that the State bore the burden of proving by a preponderance of the evidence that defendant committed the prior bad acts; (2) that the jury may not consider the evidence as tending to show defendant's character,

or that he acted in conformity with that character in committing the alleged crime; or (3) the limited purpose for which the prior bad acts were admitted.

The court offered to "take any . . . language" suggested by counsel at the charge conference for the final charge. In its final charge, the court instructed:

> Evidence has been introduced in this case concerning allegations of prior violent incidents between the Defendant and [victim]. You should distinctly understand that the Defendant is not on trial for any actions other than the charged offense. This other evidence was permitted to be introduced only for you to consider the context of the relationship between the Defendant and [victim] out of which the present allegations arose.

Because defendant did not object to the court's instruction after the charge, nor request specific language, we review the court's determination under the plain error standard. V.R.Cr.P. 52(b); see also *State v. Holcomb*, 156 Vt. 251, 256, 590 A.2d 894, 897 (1991) ("failure to give a limiting instruction . . . , in the absence of a request or objection, will be grounds for reversal only on a finding of plain error").

In *State v. Wheel*, 155 Vt. 587, 603, 587 A.2d 933, 943 (1990), this Court adopted the United States Supreme Court holding that "evidence of prior bad acts may be admitted for the purposes stated in Rule 404(b) without a preliminary finding by the trial court that the act actually occurred." (citing *Huddleston v. United States*, 485 U.S. 681, 688 (1988)). In fact, the trial court's determination is limited to finding "whether there is sufficient evidence for the jury to reasonably conclude that the prior act took place," not that "the act took place by a preponderance of the evidence." *Id.* at 603-04, 587 A.2d at 943 (citing *Huddleston*, 485 U.S. at 690). There is thus no requirement that the State prove the commission of the prior acts by a preponderance of the evidence.

■ The trial court's charge on the prior bad acts evidence limits its use to "the context of the relationship between the Defendant and [victim] out of which the present allegations arose." Although the court did not specifically include language regarding character evidence, its charge defined the limited scope for which the evidence was to be used. We find no plain error here, where the court

admitted prior bad acts evidence to show context, and issued limiting instructions requiring jurors to consider it for that purpose alone. See *Holcomb*, 156 Vt. at 256, 590 A.2d at 897 (general charge limiting consideration of the alleged act is sufficient).

## IV.

Defendant next argues that it was plain error for the trial court to permit the jury to take notes. As both parties concede, there is no statute, judicial decision or procedural rule in Vermont expressly prohibiting or permitting juror note-taking. However, we note that a majority of jurisdictions "have held that the decision to permit jurors to take notes should be left to the sound discretion of the trial court." *People v. Hues*, 704 N.E.2d 546, 548 (N.Y. 1998) (listing numerous federal and state appellate court decisions); see also *Corti v. Lussier*, 140 Vt. 421, 423, 438 A.2d 1114, 1115 (1981) (noting endorsement of juror note-taking by the American Bar Association, *Standards for Criminal Justice*, Standard 15-3.2 and Comment, *Taking Note of Note-Taking*, 10 Colum. J. L. & Soc. Prob. 565, 587 (1974)).

In its decision to permit juror note-taking at the discretion of the trial court, the *Hues* court required cautionary instructions both at the start and conclusion of a trial, reminding jurors about the potential distraction of taking notes, and over-reliance on one's notes or on the opinion of another juror who took notes. *Hues*, 704 N.E.2d at 549-50. The court further suggested that instructions should remind the jury of the availability of the court's verbatim transcript as a preferable record. *Id.* at 550.

In the instant case, the court's preliminary and closing instructions included the recommendations suggested by the court in *Hues*. The court stated:

> You may take notes during the trial if you wish. Pads and pencils will be made available. You may also have those notes with you when you deliberate at the end of the case; however, please be cautious of the following: [i]t is possible that you may miss hearing some testimony if taking notes at the time. Watching a witness as he or she testifies and noting the demeanor of the witness is something you may consider in determining the credibility of that witness. Lastly, when in deliberations at the end of the case, do not rely on the recollection of a juror who took notes about the testimony of

a witness solely because the juror took notes. As we all know, notes can be wrong. Keep in mind that every word spoken in the courtroom is recorded verbatim and can be replayed for you during deliberations if necessary.

There was no error, much less plain error.

## V.

In his final claims, defendant contends that the court erred in refusing to instruct the jury with regard to the credibility of police witnesses, and in instructing the jury on the essential elements of the offense prior to trial. We note, in evaluating these claims, that jury instructions fall within the ambit of the trial court's discretion. *Knapp v. State*, 168 Vt. 590, 591, 729 A.2d 719, 720 (1998) (mem.).

■ At trial, defendant requested an instruction as to the credibility of a police officer's testimony. The court declined to instruct the jury specifically as to the weight to be accorded to a police officer's testimony, but included in its charge language regarding the credibility of witnesses generally. It stated:

It is not the quantity of witnesses that should determine your decision, but rather the quality of their testimony. You can believe all that a witness says or you can believe part of it or you can disbelieve all of it . . . . Keep in mind that how much weight to give the testimony of any witness is entirely your decision.

Defendant did not object to this instruction after the charge. We find no abuse of discretion in the court's charge to the jury regarding the credibility of witnesses.

Defendant cites no authority for the proposition that it is improper for a court to issue preliminary instructions to the jury on the essential elements of the offense, and concedes that due to his failure to object, we must review the court's instruction for plain error. Defendant's argument does not raise a meritorious claim of error, much less plain error.

*Affirmed.*

**Dooley, J.,** concurring. The concurring opinion of Justice Skoglund prompts this additional concurring opinion on the important question of the scope of the character evidence rule of V.R.E. 404 in domestic

assault criminal cases. Although I am concerned that the prohibition on the misuse of character evidence as expressed in V.R.E. 404(a) should not be undermined by the use of specious alternative rationales for admission, I do not believe that concern should govern in the narrow circumstances of the admission of prior incidents of domestic violence with the same victim as testified to by that victim. Thus, I cannot join in Justice Skoglund's call that we reject the reasoning of *State v. Sanders*, 168 Vt. 60, 716 A.2d 11 (1998), or that we amend V.R.E. 404 to adopt the *Sanders* holding in the evidence rule.

At the outset, I believe that following Justice Skoglund's analysis requires us to overrule *State v. Sanders*, a very recent unanimous opinion of this Court. Although Justice Skoglund points out two possible alternative rationales for *Sanders*, neither is adopted by the opinion. The first is that the prior bad act evidence was relevant to show that the victim felt intimidated and threatened by defendant's action. We explicitly decided not to reach or ground the decision in *Sanders* on that rationale. See 168 Vt. at 62, 716 A.2d at 13. The second is that the evidence was admissible because the victim in *Sanders* recanted her statement describing *the domestic assault for which defendant was charged.* In fact, the *Sanders* opinion indicates that the victim recanted only her statements about the prior abuse. *Id.* at 61, 716 A.2d at 12. Although we discussed the recantation evidence as supporting the context rationale, it would not make sense to read *Sanders* as allowing evidence of prior bad acts only if the victim recants her statement that the prior bad acts occurred.

I believe that *Sanders* is a narrow opinion, as I discuss below. For three reasons, I would not overrule it.

First, the evidence here and in *Sanders* is "character" evidence only in the broadest sense of the word. It shows only that defendant has a violent relationship *with this victim.* See generally 22 C. Wright & K. Graham, Federal Practice & Procedure: Evidence § 5233 (1978 & Supp. 2001) (discussing alternative definitions of character). It is not intended to show that defendant is violent generally or that he is violent in relations with women generally. Thus, we noted in *Sanders* that the "purpose of establishing defendant's history of abusing the victim is not to show his general character for such abuse, but to provide the jury with an understanding of defendant's actions on the date in question." 168 Vt. at 62, 716 A.2d at 13.

I note there is a tendency here to confuse propensity evidence with character evidence. We could say that a bank robber has a propensity to rob banks with lots of money, rather than a broke savings and loan, but we would not call that a character trait. Rule 404(a) restricts character evidence and not propensity evidence. Rule 404(b) does prohibit propensity evidence but only in instances where the evidence shows a character trait. See V.R.E. 404(b) (evidence of other wrongs is inadmissible to "prove the character of a person in order to show that he acted in conformity therewith"). If our evidence rules prohibited all propensity evidence, some of the most important and probative evidence in many criminal trials would be excluded.

Second, as the concurring opinion points out through its citation to a number of law review articles, acts of domestic violence rarely occur in isolation, and *Sanders* is specifically limited to domestic violence cases. More important, jurors know this dynamic. They understand that after fourteen years together, a couple does not get into an extremely violent episode in which the husband is banging the wife's head against the wall solely because of a dispute over her screening his calls and with no history of such actions. In the jurors' experience, the event they are hearing about is highly unlikely without a context. If we exclude the context evidence, we invite the jurors to speculate over the real cause of the dispute, and they may speculate that she did something to "deserve" his retaliation under the circumstances or that she exaggerated the nature and severity of his violence. As *Sanders* points out, the lack of context is a particular problem in the all-too-frequent situation where she recants her claim that he battered her in the instance before the court. 168 Vt. at 63, 716 A.2d at 13.

I do not believe we face the same circumstances for most other crimes. I doubt there is a serious risk that jurors will speculate that a bank robbery did not occur, because they haven't heard about others. Even with a well-known DUI recidivism problem, I doubt that jurors' deliberation is affected by lack of evidence about prior incidents. It is no accident that advocates for battered women are particularly seeking a broad policy of admissibility in this area. See L. De Sanctis, *Bridging the Gap Between the Rules of Evidence and Justice for Victims of Domestic Violence*, 8 Yale J.L. & Feminism 359 (1996); Comment, *Beating Again and Again and Again: Why Washington Needs a New Rule of Evidence Admitting Prior Acts of Domestic*

*Violence,* 75 Wash. L. Rev. 973 (2000); Comment, *The Search for the Truth: Admitting Evidence of Prior Abuse in Cases of Domestic Violence,* 20 U. Haw. L. Rev. 221 (1998).

Finally, admission here does not seriously raise the risk of abuses underlying Rule 404(a). The risk is that the jury will give undue weight to evidence of prior criminal conduct and convict on the offense before them because the defendant is shown to be the type of person who would commit the crime, or to punish for the prior, uncharged, behavior. See 22 Wright & Graham, *supra,* § 5239, at 436-38. This case is a swearing contest between the victim, with the physical evidence on her side, and defendant. All depends on the relative credibility of the parties to the events. It is logically possible, but highly unlikely, that the jury would believe the victim about the prior violence, disbelieve her about the violence involved in the charge before it, but convict defendant anyway because he is a bad actor who must have done something or because the jury wants to punish him for the prior violence. If the jury is unlikely to misuse the evidence in this way, it makes no sense to exclude it.

On the other hand, excluding the evidence leads to an inadequate credibility determination. The jury knows that the victim is not telling all she knows and may determine she lacks credibility because of the incompleteness of the testimony. As we noted in *Sanders,* a single act of domestic violence taken out of its situational context is likely to be seen as incredible.

I recognize that the calculus may be different when the State offers an additional witness to prove the prior uncharged misconduct. As we held in *State v. Winter,* 162 Vt. 388, 401, 648 A.2d 624, 632 (1994), that situation should be addressed by applying V.R.E. 403, evaluating the State's need for the additional witness in light of the other evidence and the likely effect on the trial.

I think *State v. Sanders* is correctly decided. I would not overrule it.

**Skoglund, J.,** concurring. I concur with the majority's opinion but write separately to express my concerns about its justification for admitting evidence of defendant's prior assaults on the victim. I believe that the prior assaults were admissible to refute defendant's claims of self-defense and accidental injury to the victim. However, I do not believe that they were admissible in this case to provide "context" for the charged offense. In all other respects, I join the majority's opinion.

In response to the State's motion to admit the prior assaults, defense counsel acknowledged that "we will probably be getting into some issue of self-defense." That turned out to be an understatement. In his opening argument, defense counsel told the jurors that "the heart of this case" is "whether or not a man who is kicked in the groin acts recklessly in trying to get the person who kicked him away and to leave that scene." Defense counsel also told the jurors that the injuries the victim claimed defendant had inflicted upon her, for which she received emergency room treatment, were actually incurred the day before the incident when the victim fell down while trying to assist an infirm defendant into the house. Defendant's trial testimony was consistent with these statements, depicting the victim as the aggressor during the incident in question and claiming that his hand made contact with the victim's mouth only when he raised it in an effort to deflect her blows.

Evidence Rule 404(b) prevents the introduction of other crimes, wrongs or acts to prove the character of a person, and to suggest that, with respect to the charge the defendant is facing, he or she acted in conformity with that character — he did it before; therefore, he must have done it this time. If bad acts are admitted to show only some propensity to commit the charged offense, they are unequivocally inadmissible. The rule permits the admission of such evidence, however, if it is probative of any other fact that is of consequence to the determination of the case, such as intent, plan, opportunity, identity or absence of mistake or accident. The controlling question is "whether the evidence is relevant . . . 'does it tend to prove any fact material to the issues in the case?'" *State v. Catsam*, 148 Vt. 366, 380-81, 534 A.2d 184, 194 (1987) (quoting *State v. Howard*, 108 Vt. 137, 152, 183 A. 497, 504 (1936)). And, if relevant, does its probative value substantially outweigh its prejudicial effect? V.R.E. 403.

Here, I see no reversible error in the trial court's decision to admit the evidence, given the positions defendant took at trial. Evidence of the prior assaults on this victim were relevant to refute claims of accident or self-defense. See *State v. Elvin*, 481 N.W.2d 571, 575 (Minn. Ct. App. 1992) (evidence of prior assaults against same victim admissible to refute defendant's claim that injuries were caused by accident); *Wilson v. State*, 14 P.3d 912, 918-19 (Wyo. 2000) (evidence of prior bad acts against domestic assault victim admissible to refute claims of self-defense or accident). Defendant put the claim of self-

defense and accidental injury in issue, and thus made the evidence of his prior assaultive behavior relevant.[1]

Admittedly, the evidence strikes fairly close to demonstrating a character trait of the defendant to abuse his girlfriend. Yet this fact alone does not make it inadmissible. If, as here, the evidence is properly offered for a permissible purpose, then it need not be excluded simply because it also implicates the character of the accused.

I do not accept, however, the majority's position that the prior assaults were admissible to provide "context" for the charged offense. In reaching this conclusion, I recognize that there is a trend across the country toward leniency in admitting prior assaults against victims of domestic violence because of the nature of the crime and the difficult proof problems posed by conflicting accounts of domestic violence. Domestic abuse is a prevalent crime with a high recidivism rate; yet, the offense often goes unreported, and when it is reported, the victim is often the only witness. *Fuzzard v. State*, 13 P.3d 1163, 1168 (Alaska Ct. App. 2000). In many cases, domestic assault prosecutions come down to a credibility contest between the alleged abuser and the victim. Like child abuse, domestic violence is rarely a single, isolated act. Rather, it is a recurring and escalating pattern of behavior in which each episode of abuse is interconnected through the abuser's ultimate goal of obtaining control over the victim. J. Aiken & J. Murphy, *Evidence Issues in Domestic Violence Civil Cases*, 34 Fam. L. Q. 43, 56 (2000); see also *State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11, 13 (1998) (domestic violence is controlling behavior aimed at gaining victim's compliance through repeated incidents of abuse).

With greater understanding of the pathology of abusive relationships, courts have shown an increased willingness to permit historical evidence of domestic violence. In certain circumstances, it would be unfair to allow the jury to evaluate the victim's credibility — for example, when the victim has acted in a manner seemingly at odds with the claim of abuse — without a full knowledge of the dynamics of the relationship between the accuser and the accused.

---

[1] The majority notes that one incident, the 1993 assault, satisfied an element of 13 V.S.A. § 1044(a)(2) requiring a prior domestic assault conviction. Because defendant stipulated to the conviction, however, this reasoning cannot support the introduction of the details of that prior assault.

See *State v. Clark*, 926 P.2d 194, 206 (Haw. 1996); *State v. Grant*, 920 P.2d 609, 614 (Wash. Ct. App. 1996).

Consequently, both courts and legislatures have been more receptive in recent years to allowing the admission of prior assaults in domestic assault prosecutions. Some jurisdictions have made explicit rule changes that permit the admission of prior assaults in domestic assault cases for any reason as long as the probative value of the evidence outweighs its prejudicial impact. See Cal. Evid. Code § 1109 (2001); Minn. Stat. § 634.20; Col. Rev. Stat. § 18-6-801.5 (finding that admission of prior assaults on domestic assault victim is necessary in some cases because of cyclical nature of offense). Other jurisdictions have simply taken a more expansive view of the Rule 404(b) exceptions in the context of domestic assault cases to achieve a similar result without a rule change. See Comment, *Beating Again and Again and Again: Why Washington Needs a New Rule of Evidence Admitting Prior Acts of Domestic Violence*, 75 Wash. L. Rev. 973, 1000-01 (2000) (noting that some courts have stretched Rule 404(b) exceptions in domestic assault cases, "thereby warping the definitions of these exceptions for other crimes"); Comment, *The Search for Truth: Admitting Evidence of Prior Abuse in Cases of Domestic Violence*, 20 U. Haw. L. Rev. 221, 240-53 (1998) (discussing trends in admitting evidence of prior assaults in domestic assault prosecutions); *State v. Hedger*, 811 P.2d 1170, 1174 (Kan. 1991) ("[E]vidence of a discordant marital relationship is admissible, independent of [Rule 404(b)], to show the ongoing relationship between the parties.").

Nevertheless, this Court has explicitly stated that "we have no special exception to Rule 404(b) for sexual misconduct cases, neither have we adopted special, more liberal, interpretations of Rule 404(b) to allow the admission of prior bad act evidence in such cases, especially when we would not admit similar evidence in other cases." *State v. Winter*, 162 Vt. 388, 392, 648 A.2d 624, 627 (1994). The closest we have come to a special rule is allowing the State to show that the act charged in a child sexual abuse prosecution "is only one of a continuous series of acts" with the same victim. *Id.* at 393, 648 A.2d at 627. In such cases, we "allow the victim to tell enough of the story to preserve its integrity as a credible one." *State v. Forbes*, 161 Vt. 327, 333, 640 A.2d 13, 16 (1993). But that is only appropriate where the "context" of historical events "is so interwoven with the crime [that]

it cannot be separated without skewing the event made the subject of the charge." *Id.* That situation is not present in this case.

Nor is this a case in which the "context" evidence was admitted because the victim was dead and unavailable to testify as to the true nature of the relationship, or because the victim recanted her complaint of abuse, refused to testify, or behaved in a way that made her claim of assault seem incongruous. "Context" evidence has been most often admitted as relevant due to situations such as these. For example, in *State v. Green*, 652 P.2d 697, 701 (Kan. 1982), the defendant, on trial for murder of his wife, claimed that someone else killed his wife before he arrived on the scene. Evidence of his prior assaults against his wife was probative on the issue of identity and was admitted "to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witnesses as to the act charged." In *Grant*, evidence of prior assaults by the defendant on the victim was admitted to explain why the victim permitted contact with the abuser after the assault and then minimized the degree of violence after being contacted by the abuser from jail. "Ms. Grant's credibility was a central issue at trial. The jury was entitled to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim." 920 P.2d at 614. In *State v. Kelly*, 624 N.E.2d 733, 735 (Ohio Ct. App. 1993), the victim was permitted to testify that the reason she did not try to escape or retaliate was because she knew, based on nine years of abuse, that the defendant would either physically abuse or kill her. Moreover, the reason she did not scream when the defendant forced her and their sons into the car and abducted them was because of an earlier incident when he beat her for screaming. *Id.* And finally, in *Clark*, prior incidents of domestic violence between the victim and the defendant were admitted to show "the basis for [the victim's] recantation at trial." 926 P.2d at 206; see *Smith v. State*, 669 A.2d 1, 5 (Del. 1995) (evidence of repeated acts of violence admitted to establish course of conduct to show victim's lack of consent to sexual intercourse and to explain why she recanted her prior statements and testified that sexual relations were consensual).

Like the trial court, the majority relies on the reasoning in *State v. Sanders* for admitting the two prior assaults based on "context." But, in that case, we held that the prior bad act evidence went to prove

that defendant meant to intimidate and threaten the victim[2] — and "to put the victim's recantation of prior statements into context for the jury." *Sanders*, 168 Vt. at 62-63, 716 A.2d at 13 (noting that "[v]ictims of domestic abuse are likely to change their stories out of fear or retribution, or even out of misguided affection").[3] Given the victim's recantation of her prior statements, *Sanders* is exactly the type of case in which to provide the jury with "context" evidence. That is certainly not the situation here. The victim in this case did not equivocate in her testimony about the charged assault. Indeed, she testified fully in support of the State's case. This was a credibility contest between the two witnesses to the event. There was no need to paint a picture of the relationship between defendant and his girl-friend in order for the jury to make its assessment of who was more credible.

I believe that the "context" rationale is an appropriate approach in certain cases, such as in *Sanders*. Applied in this case, however, the rationale has no purpose and simply becomes an excuse to admit all evidence of prior assaults against victims of domestic violence. If that is the path we are to take — and I am not convinced that it is the right path in all cases — it should be done through the rule amendment process rather than by dubious or incomplete analysis that warps the existing rules for other crimes. In this case, we should affirm admission of the prior assaults to refute defendant's claims of self-defense and accidental injury, without rationalizing their admission based on "context."

---

[2] Sanders was charged with first-degree aggravated domestic assault under 13 V.S.A. § 1043(a)(2), which requires proof of intent to "threaten" the victim. As applicable in *Sanders*, 13 V.S.A. § 1042, domestic assault, is defined as "wilfully causes a family or household member to fear imminent serious bodily injury."

[3] My Brother Dooley and I disagree on what was recanted in *Sanders*. The facts of the case make clear that the victim denied not only the substantive facts of her prior sworn statements concerning the two "prior bad acts" that the court admitted, but, on the witness stand, she specifically recanted prior statements concerning the charged offense, claiming on the stand that the defendant did not have a knife and denying that she believed he was going to kill her. Thus, allowing "prior bad act" evidence was appropriate to provide "context" to aid in the jury's understanding of the recantation. It may be that the decision in *Sanders* imprecisely sets forth these factual underpinnings. If I am wrong in my understanding of *Sanders*, then this concurrence comes too late, and the Court has already adopted a special exception to Rule 404(b) for sexual misconduct cases.