NOTICE: This opinion is subject to motions for reargument under V



State
v. Longley (2005-326)

 

2007
VT 101

 

[Filed
12-Oct-2007

 

NOTICE: 
This opinion is subject to motions for reargument under V.R.A.P. 40 as well as
formal revision before publication in the Vermont Reports.  Readers are
requested to notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of any errors in order that corrections may
be made before this opinion goes to press.

 

 

                                                                    2007
VT 101

 

                                                                   No.
2005-326

 

 

State of Vermont                                                                             Supreme
Court

 

On
Appeal from

     v.                                                                                                 District
Court of Vermont,

Unit
No. 3, Franklin Circuit

 

Wendell M.
Longley                                                                        February
Term, 2007

 

 

Mark J. Keller,
J.

 

John T. Lavoie, Franklin County Deputy State’s Attorney, St. Albans, for Plaintiff-Appellee.

 

Matthew F.
Valerio, Defender General, and Anna Saxman, Deputy Defender General,

  Montpelier, for Defendant-Appellant.

 

 

PRESENT: 
Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 







¶ 
1.          
BURGESS,
J.  Defendant
Wendell Longley appeals from his convictions, after a jury trial, for first
degree aggravated domestic assault and reckless endangerment arising out of the
same incident.  Defendant argues: (1) the trial court erred when it failed to
include in its jury instruction on reckless endangerment the requirements that
a firearm must be loaded and operable; (2) the State was required, but failed,
to prove that the firearm used in the domestic assault was operable; (3) the
trial court erroneously admitted highly prejudicial evidence of defendant’s
prior bad acts; and (4) the State impermissibly commented on defendant’s
failure to prove that the firearm was fake and his failure to deny this
allegation to the police when they searched his property.  We reverse defendant’s
conviction for reckless endangerment and affirm his conviction for first degree
aggravated domestic assault.

¶ 
2.          
The
State presented the following evidence at trial.  At the time of the incident
at issue, defendant and complainant were married, but separated.  Defendant
lived in the marital home.  In 2003, complainant obtained a relief from abuse
order requiring defendant to remain 300 feet away from her.  The order also
required defendant to relinquish all of his firearms.  In the fall of 2003,
defendant asked his son to return a muzzle loader to him to use during the
upcoming hunting season, and his son did so.  In June 2004, complainant and a
friend were walking by the marital home when complainant stopped to check on
rose bushes she had planted prior to her separation from defendant.  Defendant
saw them, shouted insults at complainant, and told them to get off his
property.  As the women walked away, defendant shouted: “I’m going to get my
muzzle loader and I’m going to shoot you between the eyes. . . . When it is
over—when this is done, I’m going to hunt you down.  I’ll find you and I’ll
kill you.”  







¶ 
3.          
The
State’s evidence further showed that defendant then drove after them, stopped
his car in the street and pointed what the complainant recognized as defendant’s
hunting muzzle loader at them, and said: “I’m going to shoot you now, bitch. .
. . Take a picture, my bitch, I’m going to shoot you.”  Complainant, who had
taken to carrying a camera in the event defendant approached her in violation
of the restraining order, took pictures of this encounter.  She and her friend
ran to a neighbor’s house and the neighbor called the police.  The neighbor
testified that she saw the car stopped in the road and a person point a gun out
the window at complainant and her friend.  Interviewed several hours
later by an investigating state police trooper, defendant acknowledged that he
yelled at the women to get off his property, but denied having a gun and denied
threatening complainant in any way.  Two searches of defendant’s residence, one
with his consent and another pursuant to warrant, turned up no gun.  Defendant
was subsequently charged with first degree aggravated domestic assault for
threatening to use a deadly weapon on his wife in violation of 13 V.S.A. §
1043(a)(2), and misdemeanor reckless endangerment for placing her friend in
danger of serious injury by pointing a rifle at her in violation of 13 V.S.A. §
1025.  The muzzle loader was never found, although defendant’s son testified
that his father’s rifle essentially looked and operated the same as the son’s
own muzzle-loading rifle, which was shown to the jury.  Defendant was convicted
of both charges and this appeal followed.  

¶ 
4.          
We
hold: (1) the trial court insufficiently instructed the jury as to the crime of
reckless endangerment; (2) first degree aggravated domestic assault does not
require the use of an operable firearm; (3) the trial court did not abuse its discretion
when it admitted evidence of defendant’s past aggression toward complainant and
the issuance of a citation to him for violating an abuse prevention order; and
(4) the prosecutor’s closing argument was fair comment on the evidence in this
case and not a violation of defendant’s Fifth Amendment rights.

I.  Requirements of a
Firearm for Reckless Endangerment







¶  5.          
On
appeal we review jury instructions “as
a whole and not piecemeal, in order to ensure that they accurately state the
law on every theory fairly put forward by the evidence.”  State v. Baird, 2006 VT 86, ¶
30, 180 Vt. 243, 908 A.2d 475 (quotations and citation omitted).  The State
concedes that the trial court’s jury instructions were insufficient on reckless
endangerment because they did not inform the jury that reckless endangerment
requires proof that a firearm is operable.  We first recognized operability as
an element of reckless endangerment in State v. McLaren, when we held
that the Legislature intended only to prevent people from placing others in “actual
danger of death or serious bodily injury, not mere apparent danger.”  135 Vt.
291, 293, 376 A.2d 34, 36 (1977), superseded by statute as discussed in State
v. Messier, 2005 VT 98, ¶ 9, 178 Vt. 412, 885 A.2d 1193).  Subsequent
amendment of the reckless endangerment statute specifically eliminated another
element required by McLaren—that the firearm be loaded—but did not
address the operability requirement.  Messier, 2005 VT 98,  ¶¶  7-10. 
Consequently, the operability requirement remains.  Id. ¶ 10.  Because
the trial court failed to instruct the jury on this requirement, we reverse
defendant’s conviction for reckless endangerment.  

            II. 
Firearm as a “Deadly Weapon” for First Degree Aggravated Domestic Assault

¶ 6.      In its first degree aggravated
domestic assault instructions, the trial court declined to instruct the jury
that it needed to find that the rifle was loaded and operable at the time of
its use.  Instead, the court instructed the jury that it needed to find that
defendant was armed with a “deadly weapon” which it defined, as set forth at 13
V.S.A. § 1021(3), as “any firearm, or other weapon, device, instrument,
material or substance, whether animate or inanimate which in the manner it is
used or is intended to be used is known to be capable of producing death or
serious bodily injury.”  Defendant objected to this charge, arguing that the
instructions were erroneous because an inoperable or unloaded firearm is
incapable of causing death or serious bodily injury, and thus cannot constitute
a deadly weapon.  Defendant contends that the State failed to offer any
evidence of an operable and loaded weapon. 







¶ 7.     The State responds first by
arguing that first degree aggravated domestic assault, unlike standard
aggravated assault, focuses on the threat to the victim, not actual danger, and
a firearm can be used to create fear or intimidation regardless of whether it
is loaded or operable.  The State further argues that even if proof of actual
danger is required, there was sufficient evidence for the jury to conclude that
defendant’s rifle was capable of producing death or serious bodily injury.  “Determination
of the essential elements of an offense upon which the jury must be instructed
is a matter of law and reviewed de novo.”  State v. Coburn, 2006 VT 31,
¶ 14, 179 Vt. 448, 898 A.2d 128.







¶ 8.       First degree aggravated
domestic assault occurs when a person “uses, attempts to use or is armed with a
deadly weapon and threatens to use [it] on a family or household member.”  13
V.S.A. § 1043(a)(2).  As stated in the jury instructions, a “deadly weapon” is
defined as “any firearm, or other weapon, device, instrument, material or
substance, whether animate or inanimate which in the manner it is used or is
intended to be used is known to be capable of producing death or serious bodily
injury.”  Id. § 1021(3).  Looking at the plain language of the statute,
there is no requirement that a firearm be loaded or operable to be a “deadly
weapon.”  See State v. Kimmick, 2007 VT 45, ¶ 12, __ Vt. __, 928 A.2d
489 (construing statute by first examining its plain meaning).  Though an
unloaded or inoperable firearm is generally incapable, then and there, “of
producing death or serious bodily injury,” the statute does not require
immediate dangerousness in fact.  Instead, the statute focuses on the “use” of
any object and whether such use is “known to be capable of
producing death or serious bodily injury.”  Id. (emphasis added). 
Further, the statutory definition does not make the  knowledge of the object’s
capacity for deadly harm dependent upon an actor’s “intended” use alone;
rather, an object’s danger can be objectively “known” from the “manner” in
which it is used.  Id.

            ¶ 9.       The New Hampshire
Supreme Court reached a similar conclusion when interpreting a statutory
definition of “deadly weapon” nearly identical to that found in 13 V.S.A. §
1021.[1]  State v.
Hatt, 740 A.2d 1037, 1038-39 (N.H. 1999).  The court ruled that a firearm
used in an assault need not be loaded and operable to be considered a deadly
weapon, reasoning that “known to be capable,” as used in the statutory
definition means “generally recognized,” which in turn means “objectively
understood.”  Id. at 1038 (emphasis omitted).  The description does not
require operability because a firearm used in threatening to kill someone is
objectively understood to be capable of causing serious bodily injury.  Id. at 1038-39.  In the present case, had our Legislature intended the definition of
deadly weapon to include only firearms that are loaded and operable, it could
have explicitly said so.  Cf. People v. Favalora, 117 Cal. Rptr. 291,
292 (Ct. App. 1974) (interpreting statute banning sawed-off shotguns to not
require operability; finding significance in the legislature’s failure to
explicitly include operability in the statute); see also Wetterau, Inc. v.
Dep’t of Taxes, 141 Vt. 324, 330, 449 A.2d 896, 899 (1982) (rejecting broad
definition of a term when such meaning, if intended, could have been more
simply accomplished).[2]







¶ 10.    To construe this language
otherwise—to define the crime solely according to an accused’s intent to
actually injure another with a firearm rather than an intent to put another in
fear of a gunshot—would make the statute virtually unenforceable absent a
confession or recovery of the firearm.  Equally absurd would be to base
enforcement conditioned upon proof of the accused’s private knowledge that a
firearm is ready and able to fire, again dependent upon admission or, possibly,
recovery of the weapon, rather than the victim’s objective perception of danger
based on a general knowledge that firearms are ordinarily capable of inflicting
death or serious injury.  Because “[a] presumption obtains against a
construction that would lead to absurd results,”  Craw v. Dist. Court,
150 Vt. 114, 119, 549 A.2d 1065, 1069 (1988), we hold that the State need not
prove that a firearm is actually loaded or operable to constitute a “deadly
weapon” for purposes of the first degree aggravated domestic assault statute.

             ¶ 11.   In summary, the
statutory language and logic leads to the conclusion that a firearm employed in
a threat against a family or household member need not be shown to be operable
or loaded to constitute a deadly weapon.  First, the wording of the definition
of deadly weapon is broadly written to include anything that is, in the manner
used, “known to be capable” of producing harm.  Second, several of the assault
statutes to which the definition applies, most notably the charged crime,
proscribe conduct beyond placing someone in actual danger.  These crimes are in
contrast to reckless endangerment, which requires that a firearm be operable
because placing a person in actual danger is an element of the crime.  Messier,
2005 VT 98, ¶ 10.  In the context of first degree aggravated domestic assault,
it is entirely irrelevant if a rifle brandished to punctuate a threat was
loaded and able to fire when the threat was made, because this crime does not
require an imminent threat.  Consequently, a firearm need not be proven to be
loaded and operable, immediately or otherwise, to constitute a deadly weapon
under 13 V.S.A. §§ 1021(3) and 1043(a)(2), and the court did not err by
omitting such a requirement in its instructions to the jury.

III.  Admission of Prior Bad Acts and
Evidence of Motive







¶ 12.    At trial, the State introduced
evidence of defendant’s prior bad acts and animus against complainant in the
form of: (1) testimony about an extended assaultive episode in September 2003
that culminated in a death threat comparing complainant to deer heads mounted
on the wall; (2) the relief-from-abuse order complainant obtained against
defendant; and (3) defendant’s citation for violating the order by following
and insulting complainant.  The trial judge admitted the evidence of the prior
assault as evidence of context and ultimately admitted the evidence of the
citation to show motive.  Defendant argues that the introduction of his prior
bad acts inhibited his ability to obtain a fair trial.

¶ 13.    The State asserted that prior
instances of abuse demonstrated defendant’s motive and intent to threaten
complainant, and that the citation could have prompted defendant to get even
with complainant for reporting him to the police.  Defendant countered that his
intent and motive were not elements genuinely in issue and relevant under
Vermont Rule of Evidence 404(b), because the case clearly fell under the
reasoning announced in State v. Lipka, where we held that when a
defendant claims he did not commit the alleged offense, he implicitly concedes
that he acted with the requisite intent if the jury finds that he did in fact
commit the acts charged.  174 Vt. 377, 392-93, 817 A.2d 27, 39-40 (2002).   

¶ 14.   We distinguish Lipka for
three reasons.  First, the prior bad acts admitted into  evidence in that case
were assaults against a different victim, rather than incidents concerning the
same complaining witness as in the instant case.  Second, Lipka did not
address evidence of motive or a situational context which, as here, tends to
satisfy the State’s burden to prove, over defendant’s denial, that the incident
happened at all.  See State v. Forbes, 161 Vt. 327, 331, 640 A.2d 13, 15
(1993) (allowing evidence of other bad acts as context tending to overcome
defendant’s categorical denial of any sexual abuse).  Third, unlike Lipka,
where the nature of the charged intentional act—sex with a child—was not “genuinely
in issue,” Lipka, 174 Vt. at 391, 817 A.2d at 39 (quotation omitted),
the State had the burden in this case not only to prove that defendant
intentionally threatened, but also that he did so using an actual deadly
weapon.  This aspect of the case was at issue throughout the trial by virtue of
the repeated suggestions by the defense that the rifle was “fake,” an “imitation,”
or a “replicate.” 







¶ 15.    Courts may admit evidence of a
defendant’s prior wrongs to show motive or intent, V.R.E. 404(b), as long as
the probative value is not substantially outweighed by the danger of unfair
prejudice.  V.R.E. 403.  Trial courts have broad discretion to admit evidence
of a defendant’s prior bad acts, and we will reverse such a decision only when
we find an abuse of discretion resulting in prejudice.  State v. Ovitt,
2005 VT 74, ¶ 8, 178 Vt. 605, 878 A.2d 314 (mem.).  Furthermore, we will
presume “the probative value of the evidence argued by the State.”  Lipka,
174 Vt. at 396, 817 A.2d at 43.  Any evidence of prior wrongs, especially for
those similar to the one currently at issue, creates a risk of prejudice, id.
at 397, 817 A.2d at 43, but prejudice is unfair only when it substantially
outweighs the probative value of the legitimate purpose for which the evidence
is used.  See, e.g.,  State v. Desautels, 2006 VT 84, ¶ 15, 180 Vt. 189, 908 A.2d 463 (applying V.R.E. 403, 404(b)).

¶ 16.    The legitimate evidentiary
purposes of “other crimes, wrongs, or acts” listed in Rule 404(b) is not
exhaustive, and the State may introduce such evidence for other probative
reasons.  State v. Forbes, 161 Vt. 327, 332, 640 A.2d 13, 16 (1993). 
The State asserts that it introduced evidence of defendant’s prior abusive
behavior for the legitimate purpose of revealing the context in which the most
recent offense occurred.  We acknowledged this as a legitimate use in a case of
sexual assault of a daughter by her father in Forbes.  In that case, we
upheld the admission of evidence of the father’s prior violence and sexual
misconduct against his daughter because we found that allegations of a single
instance of incestuous behavior “taken out of its situational context of
secrecy, oppression, and recurrence, [was] likely to seem incongruous and
incredible.”  Id. at 331, 640 A.2d at 15. 







¶ 17.    Prior bad act evidence was again
recognized to show context, as well as intent, in State v. Sanders, 168
Vt. 60, 62-63, 716 A.2d 11, 13 (1998).  Although Sanders involved a
defendant’s physical abuse of his live-in partner rather than the sexual abuse
of a child, we upheld the admission of prior bad act evidence because it “portray[ed]
the history surrounding the abusive relationship” and “provid[ed] the needed
context for the behavior at issue.”  Id. at 62, 716 A.2d at 13.  We
reasoned that the State may introduce occasions of prior abuse to show that an
assailant meant to threaten his victims.  Id.  We reiterated this
reasoning in State v. Hendricks, a case involving a charge of
second-offense domestic assault against the defendant’s girlfriend.  173 Vt. 132, 139-41, 787 A.2d 1270, 1276-77 (2001).  There, we upheld the admission of evidence
of prior abuse over the defendant’s objections that the jury would punish him
for bad character.  We concluded that the State properly introduced two prior
instances of abuse, not to prove defendant’s propensity for abuse, but “to
provide the jury with an understanding of [the] defendant’s actions” in the
context of the couple’s underlying violent relationship and to prove an element
of prior conviction, as well as to negate any impression of the incident as
isolated and unlikely.  Id. at 139, 787 A.2d at 1276 (quotation
omitted).  Finally, we have also noted that the need to provide context in
domestic abuse cases is especially relevant when the pattern of abuse involves
the same victim.  See State v. Winter, 162 Vt. 388, 393, 648 A.2d 624,
627 (1994) (stating that context is important only when the offenses all involve
the same victim).

¶ 18.    Ordinarily, we will not find
that a trial court abused its discretion to admit evidence

of past wrongs unless it failed to weigh
the evidence’s probative value against its prejudicial effects.  See State v. Lawton, 164 Vt. 179, 186, 667 A.2d 50, 57 (1995).  Trial courts do
not have to specify the exact weight they assign to each factor during a Rule
403 analysis.  State v. Shippee, 2003 VT 106, ¶ 14, 176 Vt. 542, 839 A.2d 566 (mem.).  Generally, the trial court’s discretionary ruling will be
upheld where there is “some indication—especially in cases like this one where
the potential for unfair prejudice is high—that the court actually engaged in
the balancing test and exercised its discretion under V.R.E. 403.”  Id. (emphasis omitted).  







¶ 19.    In the instant case, the trial
court’s inquiries during the evidentiary hearings and its cautionary
instructions during the trial show that it did consider the probative value and
the resulting prejudice from the State’s various proffers of evidence.  At a
pre-trial hearing held on October 12, 2004, the court expressed concern about
the prejudicial effect of prior bad acts evidence generally, specifically that
such evidence not be perceived by the jury as an “unwritten allegation . . .
that he did it this time because he did it before.”  At a subsequent motion
hearing held on October 28, the court pressed the State for reasons why
evidence of prior bad acts should not be withheld until justified by the need
to cross-examine defendant or to rebut the defense presentation.  The State
explained that, in addition to providing context, defendant’s prior assault,
threats, and stalking of the complainant, and his declared belief that she was
unfaithful, explained defendant’s motivation, providing evidence of his intent
to threaten his wife, and to put her in fear of death or serious bodily
injury.  The court concluded that the proffer fell within the rationale of
admissibility under Sanders and Hendricks, cases where we upheld
the introduction of a defendant’s prior assaults against the same victim under
Rules 404(b) and 403, despite prejudice, when the evidence proved an element of
the offense as well as establishing a situational “context” for the otherwise
isolated, and seemingly “incongruous and incredible” single allegation of
abuse.  Hendricks, 173 Vt. at 139-41, 787 A.2d at 1276-78; Sanders,
168 Vt. at 62, 716 A.2d at 13.







¶ 20.    During the motion hearing held
on October 28, the court also expressed concern about unfair prejudice
resulting from the State’s proposed introduction of the police citation for an
alleged abuse-prevention-order violation issued to defendant the day before the
rifle incident.  The State proffered the citation as evidence of a potential motive
for defendant’s threats.  The court projected that it would not admit the
evidence without a more concrete relation to the alleged threatening behavior. 
On the first day of trial, the State augmented its proffer with complainant’s
anticipated testimony, based on her earlier reports to police, that defendant
complained at the time of the threat that she had “turn[ed] [him] into the
police again.”  After complainant did testify that defendant accused her of “trying
to put [him] back in jail” while pointing the rifle at her and threatening to
shoot, the court later permitted introduction of the citation over defendant’s
objection.

¶ 21.    As it turned out, evidence of
the citation was probative of motive and presented slight risk of undue
prejudice.  The nature of the citation, and even the underlying allegations for
the citation—following complainant and insulting her—are substantially
dissimilar to the death threat charged in the instant case.  Cf. Winter,
162 Vt. at 399, 648 A.2d at 631 (recognizing that evidence of past unpunished
crime is most prejudicial when similar to the charge at issue).  The fact that
defendant was cited for violating an abuse prevention order is not the kind of
particularly “inflammatory” evidence requiring a high degree of probative value
to justify its admission.  See State v. Catsam, 148 Vt. 366, 382-83, 534
A.2d 184, 194-95 (1987) (“It is the incremental probity of the evidence that is
to be balanced against its potential for undue prejudice.” (quotation
omitted)).  Indeed, this evidence was relatively dull compared to the fairly
damning evidence already heard and seen by the jury that defendant stopped his
car and pointed a rifle out the window at his wife and her friend and
threatened to kill them both. 







¶ 22.    Also in dispute was whether
defendant used a real firearm as a deadly weapon to threaten his wife and to
place her friend in danger.  Evidence of defendant’s deep-seated animosity,
anger, and motive against his wife were therefore important to the State’s
effort to establish an inference, from defendant’s past actions, prior gun
threats, and historic anger, that he was angry and serious enough to employ a
real weapon in this assault.  “Under the circumstances, the evidence of prior
acts,” and the fact and timing of the citation, “was highly probative” and its
admission was no abuse of discretion.  Id. at 383, 534 A.2d at 195. 
This is particularly true in light of the trial court’s immediate jury
instruction that the citation reflected an accusation only, to be considered in
connection with the State’s claim that defendant was motivated by anger, and
was not evidence of any actual past misconduct by defendant.  See id. at
383-84, 534 A.2d at 195 (“Given the logical relevance and substantial probative
value of the evidence, and considering the court’s instruction to the jury
respecting the purposes for which the evidence could be considered, we cannot
say that the court abused its discretion.”).[3]

IV. 
 State’s Comments in Closing
Argument 

¶ 23.    Defendant contends that several
statements by the prosecutor in closing argument, highlighting the absence of
any testimony that the muzzle loader described by the complainant was other
than a real gun, violated defendant’s Fifth Amendment right to remain silent. 
The prosecutor said to the jury, in reference to the photograph taken by the
complainant purporting to show defendant pointing a rifle: 

What is the explanation for that?  I mean
it’s a fake gun.  I mean keep in mind there’s absolutely no evidence, whatsoever,
in this case that it was anything except the muzzle loader that he owned.  Any
other suggestion is just a suggestion out of his mouth.  It started in the voir
dire during the jury selection process, a couple questions during trial, no
witness in this case, all these people, these family
members . . . .

 

At this point defendant objected on due
process grounds, claiming that he had no burden of proof.  The court responded
by immediately instructing the jury that “[t]he defendant has no burden of proof
to prove anything, as I told you at the very beginning and I’ll tell you later
on.”  The State continued:







  No witness in this case, all these
people who know him . . . wife, sons . . . nephew, all these people who know
him, nobody says: “Oh, yeah, Wendell has got a replica gun.  He’s got a fake
gun that looks just exactly like his musket . . . .” . . .There’s just no
evidence like that.

 

  The only evidence is, he owned a gun
just like this one, the one that [his son] owns . . . .             

¶ 24.    Defendant did not object on
Fifth Amendment right-to-silence grounds, so we confine our analysis of this
question, which was raised for the first time on appeal, for plain error.  State
v. Welch, 136 Vt. 442, 444, 394 A.2d 1115, 1116 (1978).  Plain error lies
only in the “rare and extraordinary cases where a glaring error occurred during
trial that was so grave and serious that it strikes at the very heart of
defendant’s constitutional rights.”  Id. at 445, 394 A.2d at 1116.  This
is not such a case.  First, these passages appear to be no comment on defendant’s
silence at all.  Rather,  they specifically refer to the defense’s suggestion
that the gun may have been fake, and the absence of any testimony to that
effect by the several witnesses called by both the State and the defense.  Any
unlikely chance that a juror would interpret this argument as a reflection on
defendant’s choice not to testify was adequately addressed by the court’s final
instruction to the jury, which reiterated that defendant had a right to not
testify and that the jury could not hold his decision in this regard against
him nor consider it in its deliberations.







¶ 25.    Considering defendant’s timely
objection on due process grounds, we are not persuaded that the argument
prejudiced defendant by shifting the burden of proof from the State to
defendant.  The record confirms that from voir dire through opening, trial, and
closing, the defense repeatedly raised the possibility that the “item”
described by complainant as defendant’s muzzle- loading rifle pointed at her
through defendant’s car window could have been a fake gun.  “The burden of
proving prejudice is on the respondent,”  State v. Lapham, 135 Vt. 393, 407, 377 A.2d 249, 257 (1977), and no undue prejudice appears here.  It was not
unfair for the State to point out that no witness called by the State or by
defendant offered any testimony in support of the notion, introduced entirely
at defendant’s election, that defendant might have brandished a “fake,” “imitation”or
“replicate” gun.  This rhetorical challenge by the State did not purport to
relieve it of its burden to prove use of a real firearm—a burden acknowledged
by the prosecutor’s argument that the “only evidence” in the case was that the
gun identified by complainant was the muzzle loader she recognized as defendant’s
deer rifle.  Any potential confusion as to who had the burden of proof was
adequately rendered harmless by the court’s clarifying instruction, issued
right after the objection and reiterated, as promised by the court, in its
closing instructions.







¶ 26.    Defendant’s final argument on
appeal is that the State, during its closing argument, also made impermissible
comments on his failure to explain to the police, during their visit, that the
gun was a fake.  It is settled that the State may not comment on a suspect’s
post-arrest silence, State v. Percy, 149 Vt. 623, 627, 548 A.2d 408, 410
(1988), or post-Miranda warning silence, State v. Mosher, 143 Vt.
197, 202-04, 465 A.2d 261, 264-65 (1983), and we have observed that a suspect
is “not required to provide an exculpatory explanation to law enforcement
officers.”  Mosher, 143 Vt. at 204, 465 A.2d at 265.  However, this does
not mean it is impermissible for the prosecution to argue that a defendant’s
voluntary statements to police were dishonest or less than forthright.  See State
v. Hunt, 150 Vt. 483, 500, 555 A.2d 369, 380 (1988) (“[W]here defendant has
chosen not to remain silent, the prosecutor may comment to the jury . . .
[about] inferences from the statements which he made of his own volition,”
including “what he says or omits....” (quotation omitted)).  Nor is the State
precluded from using a suspect’s lack of explanation prior to arrest to rebut
an explanation offered by the defense at trial.  See State v. Zele, 168
Vt. 154, 160, 716 A.2d 833, 838 (1998) (finding no Fifth Amendment violation
when State raised defendant’s failure to claim, during a police search, that
the marijuana discovered in fact belonged to his roommate in order to rebut
defense claims at trial that contraband belonged to roommate and not the
defendant).  Here, the defense suggested throughout the proceeding that what
was depicted in the State’s photographic evidence and identified by complainant
as defendant’s muzzle loader could be something other than an actual firearm. 
It was not error for the State to point out that defendant failed to offer this
explanation to the police when he denied having any gun.  Id. 

The conviction for reckless endangerment
is reversed, and the conviction for aggravated domestic assault is affirmed.

 

 

FOR THE COURT:

 

 

_______________________________________

Associate Justice





[1] The New Hampshire statute defined
“deadly weapon” as “any firearm, knife or other substance or thing which, in
the manner it is used, intended to be used, or threatened to be used, is known
to be capable of producing death or serious bodily injury.”  N.H. Rev. Stat.
Ann. § 625:11(V) (2007).





[2]  Other courts have held to the contrary
based on statutes that, unlike Vermont’s, expressly require that a weapon be
capable of deadly harm to be considered a “deadly weapon.”  See People v.
Wilson, 684 N.Y.S.2d 718, 720-21 (App. Div. 1998) (noting that the
legislature chose to define “deadly weapon” as a loaded weapon, a shot from
which is capable of producing death or serious bodily injury); State v. McCallister,
No. 21637, slip op., 2007‑Ohio‑576, ¶¶ 12-17 (Ct. App. Feb. 9,
2007) (relying on the statutory definition of deadly weapon, the court
determined that a firearm includes inoperable guns only if they can readily be
made operable); State v. Mustain, 675 P.2d 494, 495-96, n.1 (Or. Ct.
App. 1984) (holding that a firearm must be loaded and operable to be capable of
inflicting serious bodily harm).





[3]  That the trial court was attentive to
controlling the prejudicial aspects of the State’s proffers is further
reflected in its rulings limiting the State’s discussion of defendant’s
unemployment history so as to avoid introducing evidence that he sexually
harassed his coworkers; redacting docket sheet entries to omit sentencing
information; and excluding introduction of defendant’s letters to a son
excoriating his wife’s supposed unfaithfulness and untruthfulness and referring
to her with threatening language.