2010 VT 77

## State of Vermont v. Michael A. Williams

[9 A.3d 315]

No. 09-253

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed August 20, 2010

*Michael S. Munson*, Bennington County Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant appeals from a judgment of conviction, based on a jury verdict, of aggravated domestic assault. He contends the trial court erred in admitting evidence of his prior assaults against the complainant. We affirm.

¶ 2. The record evidence may be summarized as follows. Complainant testified that she met defendant in November 2006 and began an intimate relationship with him in August 2007. Complainant was a teenager at the time and had a child from an earlier relationship. Complainant ended the relationship with defendant in late February 2008, when she was pregnant with his child, and shortly thereafter obtained a relief-from-abuse order prohibiting defendant from contacting her. In September 2008, she gave birth to a baby girl.

¶ 3. The incident that gave rise to this appeal occurred about two months later, on the afternoon of November 8, 2008. Complainant testified that defendant appeared at her apartment in Bennington and "let himself in," announcing that he wanted to "meet [his] daughter." Defendant initially appeared to be calm, but after interacting with the baby for a short time his demeanor changed. He sat in a chair opposite complainant, asked her "[w]hat is your f- - - - - - problem? You're the reason I'm not part of her life," and then struck complainant on the mouth. Defendant became progressively more enraged, rose from his chair, grabbed complainant by the throat and choked her while shouting that he was going to kill her. Defendant released her after a short time,

but repeated the action several more times over the next twenty minutes. Finally defendant walked to the baby's bedroom, said "[d]addy loves you," tried to kiss complainant, told her that he loved her, and walked out. Before leaving, defendant warned complainant that she could call the police and they could "hide you and my daughter, but they won't hide your whole family. . . . I can draw you out. You'll go to your little sister's funeral."

¶ 4. Complainant reported the incident to the police the following afternoon, and defendant was charged with aggravated domestic assault. Before trial, defendant gave notice of his intent to call alibi witnesses, and the State provided notice of its intent to offer evidence of prior bad acts under Vermont Rule of Evidence 404(b). The State's notice identified two incidents of prior assaults by defendant against complainant. The first occurred in September 2007, when complainant attempted to call her mother after an argument with defendant and, in response, defendant allegedly struck and choked her. The second occurred the following month, in October 2007, when defendant again allegedly punched and choked complainant while she was attempting to leave and walk to her mother's house in Bennington. Defendant objected to the admission of the evidence, asserting that any probative value was substantially outweighed by its unfair prejudicial effect.

¶ 5. The court held a hearing on the motion just before the start of trial. The parties offered little additional argument, however, relying essentially on their pleadings. Citing our decisions in *State v. Sanders*, 168 Vt. 60, 716 A.2d 11 (1998), and *State v. Hendricks*, 173 Vt. 132, 787 A.2d 1270 (2001), the trial court ruled that the evidence was relevant and admissible to provide the jury "context within which to assess claims of domestic violence within [the parties'] relationship," and that the danger of unfair prejudice from the evidence did not substantially outweigh its probative value. Complainant subsequently testified about the two prior assaults at trial. She also explained that defendant had another side to his character that was sweet and loving but that his moods were "like a light switch." She did not report the earlier assaults because defendant was always sorry afterwards and she was hopeful that it would not happen again.

¶ 6. The State's only other witness was the investigating officer, who testified that he took complainant's statement on the day after the incident, and that she was upset and nervous at the time and had a cut on her lip. The officer did not observe any injuries

to complainant's neck, but explained that one often did not observe physical signs of strangulation.

¶ 7. Defendant called two alibi witnesses. A woman who claimed that defendant had been her "friend for a long time" testified that defendant was visiting her house in Gloversville, New York, which is several hours drive from Bennington, sometime between 5:00 and 6:00 p.m. on the day of the assault, and that she also saw him the next afternoon with his girlfriend. Complainant could not recall the exact time of the assault at trial, but reported to the police that it had occurred at about 6:00 p.m. Defendant's girlfriend, who lives near Gloversville, testified that defendant picked her up the morning after the assault and that they spent the day together.

¶ 8. As noted, the jury returned a verdict of guilty on the charge of aggravated domestic assault. The court denied a motion for new trial, and defendant was later sentenced to a term of ten to fifteen years. This appeal followed.

¶ 9. Defendant contends the trial court erred in admitting complainant's testimony concerning the prior assaults. Before considering the claim, we take the opportunity to discuss the manner in which the issue was raised and addressed at trial. Although the State's motion was fairly specific as to the details of the prior incidents, its analysis was essentially boilerplate, stating simply that the evidence was admissible "to show absence of mistake or accident and/or to show the context of the defendant's relationship with the victim." The motion did not attempt to relate the prior incidents to any other anticipated trial evidence or defense in order to show how and why they were necessary and material to demonstrating an absence of accident or mistake or establishing a broader "context" to the parties' relationship. Nor did the State attempt to elaborate on these issues during the pretrial hearing.

■ ¶ 10. *As explained more fully below, we have consistently held that prior bad acts may be admissible in domestic-assault cases if relevant and material to a genuine issue in the case, which may include placing the charged offense in "context" in order to provide the jury an understanding of the victim's behavior that might otherwise appear to be incongruous. See, e.g., State v. Laprade, 2008 VT 83, ¶ 22, 184 Vt. 251, 958 A.2d 1179. Our decisions do not, however, mean that prior bad acts — even*

by the same defendant against the same domestic-assault victim — are automatically admissible. The State continues to bear the burden of establishing that the evidence does not simply show a propensity to commit the crime charged, but instead is relevant to a genuine, separate issue in the case and that its probative value outweighs the potential for unfair prejudice. *State v. Lipka*, 174 Vt. 377, 391, 817 A.2d 27, 38-39 (2002). In many cases, resolving these issues may require a trial court to defer ruling on the motion until later, when questions of relevance and undue prejudice may be assessed in light of the actual evidence developed at trial. See *United States v. Lawless*, No. 97-2281, 1998 WL 438662, at *4 (10th Cir. July 15, 1998) (observing that "[t]he admissibility of Rule 404(b) evidence will generally be a fact-bound determination, depending to a significant degree on the character of the other evidence admitted at trial"). At the very least, however, they require a somewhat more probing pretrial inquiry than occurred here. Cf. *State v. Longley*, 2007 VT 101, ¶¶ 19-20, 182 Vt. 452, 939 A.2d 1028 (noting that during a pretrial hearing the trial court "pressed the State for reasons why evidence of prior bad acts should not be withheld until justified" by the facts adduced at trial, and deferred ruling on the admissibility of an abuse-prevention-order violation until "a more concrete relation" to the facts appeared at trial).

 ¶ 11. As we discuss below, however, it turned out that the prior-bad-acts evidence admitted by the trial court here became relevant to several issues developed more fully at trial, including the nature or "context" of the relationship between defendant and complainant. Nevertheless, we take the opportunity to point out the pitfalls in granting such broad pretrial motions, and to underscore the advantages of either deferring a ruling until trial or, at a minimum, establishing a clear basis for deciding the issue in advance. See *United States v. Tunkara*, 385 F. Supp. 2d 1119, 1121 (D. Kan. 2005) (because "a court is almost always better situated during the actual trial to assess the value and utility of evidence . . . [t]he better judicial practice is to defer rulings on relevancy and unfair prejudice . . . until trial when the factual context is developed"); *State v. Hester*, 760 P.2d 27, 39 (Idaho 1988) (observing that "motions *in limine* seeking advanced rulings on the admissibility of evidence are fraught with problems" because they are based on an alleged rather than an actual set of facts, and that a trial judge may therefore "defer his ruling until

the case unfolds and there is a better record upon which to make his decision").

¶ 12. As noted, evidence of "other crimes, wrongs, or acts" is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith, but is admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." V.R.E. 404(b). Courts may admit such evidence if it is genuinely relevant and material to an issue in the case, and its "probative value is not substantially outweighed by the danger of unfair prejudice." *Longley*, 2007 VT 101, ¶ 15. "Trial courts have broad discretion to admit evidence of a defendant's prior bad acts, and we will reverse such a decision only when we find an abuse of discretion resulting in prejudice." *Id.*

¶ 13. As the trial court here recognized, we have held that the list of "other purposes" in Rule 404(b) is not exclusive, and we have specifically upheld the admission of testimony concerning a domestic-assault defendant's prior abusive behavior against the victim "to portray the history surrounding the abusive relationship, providing the needed context for the behavior in issue." *Sanders*, 168 Vt. at 62, 716 A.2d at 13. We have reaffirmed our holding in *Sanders* on several occasions, most recently in *Laprade*, where we upheld the admission of evidence of an earlier assault by the defendant against the same victim to explain "the nature of her relationship with defendant" and in particular to explain the seeming "incongruity" between the assault allegation and the victim's conduct in not calling the police, bailing the defendant out of jail, and other seemingly conflicting behavior. 2008 VT 83, ¶ 22. "This is just the sort of incongruity," we explained, "that 'context' evidence is meant to remedy in domestic-violence cases." *Id.*; see also *Longley*, 2007 VT 101, ¶¶ 19-21 (upholding admission of defendant's prior assault against the victim to provide context and motive). But cf. *Hendricks*, 173 Vt. at 147, 787 A.2d at 1282 (Skoglund, J., concurring) (cautioning against automatic admission of prior bad acts to establish "context" while recognizing that "[i]n certain circumstances, it would be unfair to allow the jury to evaluate the victim's credibility — for example, when the victim has acted in a manner seemingly at odds with the claim of abuse — without a full knowledge of the dynamics of the relationship between the accuser and the accused").

¶ 14. Assessed in light of these standards, we find no abuse of discretion. Defendant's trial strategy here was aimed precisely at establishing an incongruity between complainant's allegations and her actions before and after the assault. In closing, defense counsel recalled complainant's testimony expressing affection for defendant, her hopes of retaining some contact between defendant and their daughter, and the evidence that she had written defendant letters and been in telephone contact with him subsequent to the restraining order of March 2008. "Why," counsel asked, "would she continue having contact with this supposedly violent man after she gets an emergency restraining order?" Counsel also argued that complainant's assault claim did not "make sense because [complainant] doesn't follow through in a way that someone in that kind of situation would follow through." As counsel noted: "She doesn't report it the same night. She doesn't go to the hospital. . . . She doesn't tell anyone that night. She waits until the next day." These were not the actions, counsel argued, of a person responding "in a reasonable way, a way that we would expect people to respond under those circumstances."

¶ 15. As discussed, this was precisely the sort of argument that "context" evidence is designed to address — to show the nature of the parties' relationship and explain what might otherwise appear to be incongruous behavior to a jury, such as remaining with an abusive partner and delaying a report of abuse. The evidence was also relevant to address issues of motive and claims of fabrication. Defense counsel argued that complainant's allegations made sense only as an effort to appease her mother and her former partner, who were both hostile to defendant and wanted him out of her life; indeed, complainant was concerned, counsel argued, that the father of her older child would seek to modify custody if she did not somehow remove defendant from the scene. As counsel argued, "she's got to satisfy [the older child's] father because, if not, she might lose custody of her son. She's got to satisfy her mother . . . ." With such motivation, counsel averred, anyone "can make up anything." Thus, the testimony concerning the prior incidents was admissible to rebut defendant's claims of bad motive and fabrication. See *State v. Oscarson*, 2004 VT 4, ¶ 40, 176 Vt. 176, 845 A.2d 337 (evidence of prior sexual abuse was relevant to rebut allegation that victims' stories were fabricated).

¶ 16. We also find no merit to defendant's claim that the probative value of the evidence was substantially outweighed by

the danger of unfair prejudice. As noted, the evidence was highly probative under the circumstances to explain the dynamic of the parties' relationship and complainant's conduct both before and after the assault. Nor did the evidence "raise the specter of unfair prejudice that could have resulted from testimony regarding other victims of abuse." *Laprade*, 2008 VT 83, ¶ 25. We note, as well, that the trial court here specifically instructed the jury that it could consider the evidence of "conduct between the defendant and the alleged victim" for the purpose of "assessing the relationship" between the parties but "may not consider this evidence as directly proving that defendant committed the assault which he is charged with" nor "assume that because the defendant was said to have committed past acts of violence that he is guilty by virtue of having bad character."[*] Accordingly, we find no abuse of discretion in admitting the evidence and no basis to disturb the judgment.

*Affirmed.*

---

[*] Although defendant appears to criticize the court's limiting instruction as inadequate, he raised no objection to the instruction at trial and makes no claim of plain error on appeal. Accordingly, any claim of instructional error is waived. *State v. Carpenter*, 170 Vt. 371, 374, 749 A.2d 1137, 1139 (2000).