2011 VT 23

**STATE of Vermont v. Robert B. CONNOR**

[19 A.3d 146]

No. 09-269

¶ 1. February 22, 2011. Defendant appeals from his convictions of domestic assault and unlawful restraint following a jury trial. We affirm.

¶ 2. Before the charges were brought in this case, defendant and the complainant had been involved in an intimate relationship for approximately one year, during which time defendant moved into the complainant's residence. The incident that led to the charges occurred in late March 2008, but the complainant did not report the incident to police until a few days later. Before trial, the prosecution filed a notice of its intention to introduce evidence of prior incidents of abuse. Following a pretrial hearing, the district court permitted the State to present testimony concerning two instances of prior physical abuse. At trial, the State presented several witnesses, including: (1) a friend of defendant's, who stated that defendant had acknowledged striking the complainant on a prior occasion in August 2007; (2) a nurse practitioner, who stated that she observed the complainant in August 2007 with a red eye and bruises allegedly caused by defendant; and (3) a police officer, who mentioned that police had been to the complainant's residence on a prior occasion, at which time a couple living with the complainant and defendant stated that they were tired of the abuse. The complainant then testified at length about defendant's physical abuse culmi-

nating in the incident that led to the charges. Defendant did not testify and proceeded pro se, with an attorney present as a backup. He cross-examined witnesses and presented opening and closing statements to the jury. The State also presented an expert witness's testimony concerning Battered Women's Syndrome. Among other things, the State's expert told the jury that an ongoing abusive relationship can result in shame, denial, and a reluctance to report abuse.

¶ 3. On appeal, defendant argues that the trial court erred by permitting the State to introduce evidence from multiple witnesses of his uncharged prior bad acts. He contends that a disproportionate part of the State's case was directed at prior bad acts rather than the charged incident and that the trial court failed to perform its gate-keeping function and employ the requisite balancing test in Vermont Rule of Evidence 403 to assure that the prior-bad-act evidence was not unduly prejudicial. In defendant's view, the trial court abused its discretion by assuming that evidence of prior bad acts is automatically admissible in domestic assault cases and that a limiting instruction automatically cures any potential prejudice resulting from the admission of such evidence. While emphasizing that prior-bad-act evidence is not automatically admissible in domestic assault cases, we find no basis to overturn the instant convictions for the reasons expressed below.

¶ 4. Evidence of prior bad acts is not admissible to prove character in order to show that a person acted in conformity therewith, but it may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." V.R.E. 404(b). The rule's listing of "other purposes" is not exclusive, see *State v. Forbes*, 161 Vt. 327, 332, 640 A.2d 13, 16 (1993), and this Court has acknowledged that evidence of prior bad acts may be relevant to provide con-

text with respect to a charged offense that otherwise might not make sense when viewed in isolation. See *State v. Sanders*, 168 Vt. 60, 62, 716 A.2d 11, 13 (1998) (explaining that "[a]llegations of a single act of domestic violence, taken out of its situational context, are likely to seem 'incongruous and incredible' "). Such historical context has been held relevant to explain a complainant's later recantation as a product of fear "or even out of misguided affection." *Id.* at 63, 716 A.2d at 13; cf. *Forbes*, 161 Vt. at 333, 640 A.2d at 16 (noting that evidence of prior history of abuse has been held admissible to establish an ongoing abusive relationship so as "to allow the victim to tell enough of the story to preserve its integrity as a credible one"). Our review of the trial court's admission of prior-bad-act evidence under Rule 404(b) requires us to analyze first whether the evidence is relevant and material to the cause of action and second whether the evidence is more probative than unfairly prejudicial. *State v. Laprade*, 2008 VT 83, ¶ 14, 184 Vt. 251, 958 A.2d 1179. We will reverse the trial court's decision to admit such evidence only if we find that the court withheld or abused its discretion to the extent that a substantial right of the defendant was affected. *State v. Hendricks*, 173 Vt. 132, 138, 787 A.2d 1270, 1275 (2001).

¶ 5. In this case, at the pretrial hearing on the State's motion to allow admission of prior bad acts, defendant objected on the basis that the complainant was not a recanting witness and that he was not claiming self-defense. He also argued that evidence of prior assaults would be unduly prejudicial. In response, among other things, the prosecutor noted that this was a situation where the complainant delayed in contacting police, which could cause the jury to question her credibility. The trial court concluded that admission of the evidence was appropriate with a limiting instruction.

¶ 6. At trial, the complainant testified at length about her on-again-off-again rela-tionship with defendant, whom she described as controlling. She stated that she put up with the abuse from defendant — whom she also referred to as "God" at one point during her testimony — because "he has a physical presence that just melts me." She explained how her self-denial of the abusive relationship and defendant's controlling behavior had led her to decline to report the domestic abuse during an emergency room visit resulting from an earlier assault and later to withdraw a restraining order that she had previously filed. She was unable to remember details of what had led to the final assault upon which the charges were based. Nor could she recall her actions following the assault. She stated that she did not initially report the most recent assault for fear of defendant's reaction but realized a few days after it occurred that she could no longer tolerate the situation and had to report the abuse.[*]

---

[*] The record does not support the interpretation of the facts upon which the concurrence is based. The State's information alleges that the charged assault occurred on "or about" March 31, 2008, rather than a date certain. And the contemporaneous March 31, 2008 affidavit of the investigating officer who testified at trial indicated that the complainant had called him that day and advised him that defendant had choked her "sometime last week." More specifically, the affiant reported complainant as telling him: "The last incident he knelt on me and held me down and choked me. This was over a week ago." According to the affiant, complainant told him that "after this weekend I knew I had to take action to protect myself." Consistent with the affidavit, the complainant testified at trial that she waited a week before calling the police because she was afraid of what defendant might do to her. Moreover, the investigating officer testified at trial that he waited a day to go to the complainant's house to

¶ 7. Defendant's cross-examination of the witnesses and his closing argument to the jury were aimed at undermining the complainant's credibility. He cross-examined both the complainant and the nurse practitioner about medications that the complainant had been taking to address her mental-health issues. He asked the nurse practitioner if she was aware that one of the side effects of those drugs was easy bruising, thereby implying that any bruises she observed may have been caused by the medication rather than him. He also asked the nurse practitioner questions revealing that the complainant was taking medications for depression. Further, defendant questioned the complainant not only about her medications but also about her inability to recall specific details of the charged assault, including how long it lasted and when it occurred.

¶ 8. Defendant continued this theme in his closing argument to the jury, emphasizing the lack of details concerning the assault. He told the jurors that, with respect to the only incident for which he was being charged, the complainant was accusing him of holding her down for "an undetermined amount of time" during an undetermined time of the day. He emphasized that the complainant was unable to tell them not only when or how long the incident took place but also what she did after the assault. He noted the contradictions and lack of clarity in the complainant's testimony and reminded the jury that there was no physical evidence of injury with respect to the charged inci-

take a statement from her because she was still hesitant to report the abuse before finally calling back and asking him to come to her house. In short, the complainant's fear of defendant stemming from his past abuse caused her to delay reporting the charged incident for a week or more. This is admissible context evidence consistent with our prior holdings.

dent — "no pictures, no doctor's reports. Nothing." Following closing arguments, the trial court gave the jurors a limiting instruction cautioning them that they could consider prior-bad-act evidence to understand the nature of the parties' relationship but not to conclude that defendant is a bad person or was more likely to have committed the charged assault.

¶ 9. Upon review of the record, we find no error in the trial court's admission of prior-bad-act evidence. The testimony concerning the history of defendant's abusive conduct toward the complainant, as well as her tolerance and delayed reporting of that abuse, was, if believed, consistent with the expert testimony about Battered Women's Syndrome. The prior-bad-act evidence allowed the jury to reconcile the claimed assault with the complainant's reluctance to end the abusive relationship. Its relevance to the complainant's credibility was no less than the same sort of history deemed admissible to counter a recantation in *Sanders*. See 168 Vt. at 62, 716 A.2d at 12. A history of battering is no less relevant to establish a more credible context for domestic assault in this case than was a pattern of incest relevant to present a more credible context for the charge of sexual assault by a father against his daughter in *Forbes*. See 161 Vt. at 329, 640 A.2d at 14. As in another domestic assault case recently decided by this Court, "[d]efendant's trial strategy . . . was aimed precisely at establishing an incongruity between complainant's allegations and her actions before and after the assault." *State v. Williams*, 2010 VT 77, ¶ 14, 188 Vt. 405, 9 A.3d 315. Defendant's questioning of the complainant's failure to recall details of the charged assault and of her delay in reporting the assault are "precisely the sort of argument[s] that 'context' evidence is designed to address — to show the nature of the parties' relationship and explain what might otherwise appear to be incongruous behavior to a jury, such as

remaining with an abusive partner and delaying a report of abuse." *Id.* ¶ 15.

¶ 10. In short, the record in this case reveals the type of circumstances that our holding in *Sanders* was meant to address. As we stated in *Sanders*, "[w]ithout knowing the history of the relationship between the defendant and the victim, jurors may not believe the victim was actually abused, since domestic violence is learned, controlling behavior aimed at gaining another's compliance through multiple incidents." 168 Vt. at 62, 716 A.2d at 14 (quotation omitted). As was the case in *Laprade*, here the jury might well have found the complainant's reluctance to contact the police difficult to reconcile with her claims of abuse. 2008 VT 83, ¶ 22. As in *Laprade*, the jury in this case "would have been unable to make an adequate determination of [the complainant's] credibility without hearing further testimony about the nature of her relationship with defendant." *Id.*

¶ 11. We do not agree with defendant's claim that evidence concerning prior bad acts dominated the trial. There was brief testimony from defendant's best friend, the nurse practitioner, and a police officer regarding prior assaults. The only detailed testimony concerning prior assaults came from the complainant herself, who described the incidents in some detail to provide the jury with a better understanding of the nature of her relationship with defendant up until the time of the charged incident. To be sure, presenting witnesses other than the complainant to testify about prior bad acts, particularly when those witnesses testify only about prior bad acts, raises concerns as to whether defendant would be unduly prejudiced by the trial losing its focus on the charged acts. Our review of the record, however, does not compel us to reverse the judgment based on such considerations. For the most part, the trial focused on the charged incident, and the court unequivocally instructed the jury to base its decision on whether defendant was guilty of committing the charged act, independent of any previous conduct on his part.

¶ 12. Defendant also complains that the trial court failed to specifically balance under Rule 403 the probative value of the prior-bad-act evidence against its prejudicial impact. We find this argument unavailing. The record reveals that the trial court did conduct a Rule 403 analysis, albeit briefly. The court assured defendant, who was arguing pro se, that he expressed the correct Rule 403 objection, but that "the weight is toward putting this in." Although it would have been helpful for the court to express in some detail its rationale for determining that the probative value of the evidence outweighed its prejudicial impact, there was no error in the court's ruling. The trial court "do[es] not have to specify the exact weight [it] assign[s] to each factor during a Rule 403 analysis." *State v. Longley*, 2007 VT 101, ¶ 18, 182 Vt. 452, 939 A.2d 1028. As in *Williams*, where we found no merit to the defendant's Rule 403 claim of error, "the evidence was highly probative under the circumstances to explain the dynamic of the parties' relationship and complainant's conduct both before and after the assault." 2010 VT 77, ¶ 16. "Nor did the evidence 'raise the specter of unfair prejudice that could have resulted from testimony regarding other victims of abuse.' " *Id.* (quoting *Laprade*, 2008 VT 83, ¶ 25). Indeed, the admission of a history of abuse for context in this case was no more prejudicial than in *Sanders* and *Hendricks*, where the jury considered other incidents of alleged abuse against the same complainant by the same defendant. In this case, apart from making a generalized claim of undue prejudice from adverse evidence, defendant fails to demonstrate how the contested prior-bad-act evidence unduly exceeded the prejudice acknowledged but not excluded in *Sanders* and *Hendricks*.

¶ 13. Finally, although we conclude that the record in this case supports the trial court's decision to allow the challenged prior-bad-act evidence, we repeat our recent admonition in *Williams* that evidence of prior bad acts is not automatically admissible in domestic-assault cases. 2010 VT 77, ¶ 10. As we stated in *Williams*, the trial court should either defer ruling on a prior-bad-act motion until trial or, at minimum, establish a clear basis for deciding the motion in advance. *Id.* ¶ 11. That way, trial courts can make more reasoned and clearly defined decisions based on the evidence adduced at trial and the actual defense presented to the jury.

*Affirmed.*

¶ 14. **Dooley, J.,** concurring. I concur in this case because defendant failed to object to the testimony of the witnesses who testified to prior incidents of abuse. If defendant had objected to the testimony of those witnesses, the objection would have triggered the kind of detailed Rule 403 analysis that was needed in this case. Since there was no objection, it is impossible to know where that analysis would have led.

¶ 15. I start with the majority's comment that, in the Court's opinion, evidence of prior bad acts did not dominate the trial. *Ante,* ¶ 11. I think that conclusion is misleading and generally wrong. The trial in this case was exceedingly brief. The entire trial, including a pretrial discussion about jury instructions and other matters, the jury deliberations and verdict, and a post-trial discussion about a presentence investigation (PSI) report and scheduling sentencing, occurred in one day and takes up 224 transcript pages. Of that, the presentation of evidence takes up 162 pages.

¶ 16. The evidence consisted of seven witnesses. Two of these witnesses related to the separate charge of failing to appear when defendant was summoned to court,

a conviction defendant has not appealed. Of the remaining five, one was an expert on the dynamics of domestic violence who testified that "I don't know anything about this case." This left four witnesses to testify about the abuse, one of whom was the complainant.

¶ 17. The first two of these witnesses were third parties who knew something of an earlier act of domestic violence and nothing about the incident for which defendant was charged. One was a friend of defendant, who testified that defendant once told him that defendant had struck the complainant while they were in Maryland. The second was a nurse, who saw the complainant in August 2007 and testified that the complainant reported that she had been assaulted by defendant, her boyfriend. The nurse testified that she had examined the complainant and found an injury to her eye and black-and-blue marks on her arm.

¶ 18. The third witness was the Williston police officer whom the complainant called on the day of the incident. He testified that she called the police on March 31, 2008, the date of the incident according to the information, and that he took a statement from her at the police station on the day after the incident and visited her in her home the day after that. He testified that the complainant was very scared and shaken and was crying. The complainant stated that defendant had choked, hit, and restrained her. The officer also testified that the Williston police had answered a call at some time in the past from a roommate of the complainant who stated that she had observed defendant physically abusing the complainant.

¶ 19. The only other witness was the complainant. She described the incident for which defendant was charged over five transcript pages and further described it to some extent in three other pages. She described the three earlier incidents in the better part of nineteen pages.

¶ 20. In summary, there was much more testimony about the former incidents than there was about the incident for which defendant was charged. The testimony about the charged incident came only from the complainant, with no corroboration other than the testimony of the police officer who interviewed her. Testimony about the earlier Maryland incident came from the complainant and two independent witnesses. The testimony included evidence of the complainant's medical condition after the Maryland incident, evidence that was noticeably absent with respect to the charged incident. The police witness testified about the report of earlier abuse from the roommate. Fairly characterized, the testimony about earlier incidents of abuse — that is, about prior bad acts — dominated the trial.

¶ 21. I also believe that another clarification about the evidence is important. The State charged that defendant assaulted the complainant on or about March 31, 2008. The Williston police officer testified that the complainant called him on that date. The prosecutor never asked the complainant to provide the date of the incident, and she testified only that it occurred in March 2008. She specifically testified that she waited a week before calling the police because she was afraid of what defendant might do to her. I emphasize this evidence because it is debatable whether the complainant significantly delayed reporting the 2008 abuse incident and particularly whether she sought to remain living with defendant after that incident.

¶ 22. I stated my views on prior-bad-act evidence as context evidence in domestic abuse cases in *State v. Hendricks*. 173 Vt. 132, 142-45, 787 A.2d 1270, 1278-80 (2001) (Dooley, J., concurring). The Court made clear in that decision, as we have in others, that the prior-bad-act evidence is admissible so that the jury is not presented with a single incongruous and incredible act of domestic violence, separated from the historical context, and so they might understand the actions of the defendant during the charged incident. *Id.* at 139, 787 A.2d at 1276. It is not admissible to prove the defendant's propensity to inflict domestic violence on the complainant or to show that because he engaged in domestic violence in the past he probably did it on the date charged in the information. *Id.* I argued that evidence of prior incidents of domestic violence on the same individual should be admissible under Rule 404(b) if "testified to by that victim." *Id.* at 143, 787 A.2d at 1279. I indicated that "the calculus may be different when the State offers an additional witness to prove the prior uncharged misconduct" and that this "situation should be addressed by applying V.R.E. 403, evaluating the State's need for the additional witness in light of the other evidence and the likely effect on the trial." *Id.* at 145, 787 A.2d at 1280.

¶ 23. The point of those observations is particularly demonstrated here. To the extent that the State is proving the fact and detail of the earlier incidents, in a way that it is not proving the charged incident, its purpose is primarily propensity and not context. The State can fully show context, as it did here, by the testimony of the complainant and the expert on the dynamics of domestic violence. The testimony of the complainant with respect to the charged incident does not appear incongruous or unbelievable.

¶ 24. In this case, the State used the nurse to show the extent of the complainant's injuries from the incident in Maryland. Although the complainant testified that she went to the hospital for treatment after the charged incident, the State offered no evidence of her medical condition at that time. I think its purpose was transparent — it wanted the jury to see the type of injuries defendant has inflicted to argue that defendant inflicted those injuries here. If the State wants to

get into the complainant's injuries, it should be required to offer evidence of them for the charged incident, not for the earlier incidents.

¶ 25. The trial judge never conducted the kind of Rule 403 analysis I called for in *Hendricks*, probably in part because the State never disclosed that it was relying on independent witnesses to show prior bad acts. The court never performed such an analysis at the time of admission of the prior-bad-act evidence because there was no objection at that time. Thus, we cannot know what the trial judge would have concluded in this discretionary analysis.

¶ 26. Nevertheless, I seriously question whether any of the testimony from the third-party witnesses should have been admitted. On the one hand, the need for context evidence was less than in our earlier cases. While it is clear that the complainant delayed reporting the earlier incidents and remained living with defendant despite the abuse, there is a serious question whether she delayed reporting after the charged incident, except for a short period to ensure her own safety. There is no evidence that she intended to keep living with defendant once the March 2008 incident occurred. It makes no sense to allow the admission of the prior conduct in order to explain why the complainant stayed with defendant in the past — her conduct in staying with defendant in an abusive relationship never reaches the jury except when the prior-bad-act evidence is admitted.

¶ 27. On the other side, there is serious risk that the jury will believe that the State proved that because defendant abused the complainant in the past, as the independent witnesses testified, he must have done it on the date charged. As I stated in *Hendricks*, it is highly unlikely that when a complainant testifies to prior incidents of abuse, as well as to the charged incident, the jury would believe the testimony of the prior incidents, dis-

believe the testimony of the charged incident, and convict anyway based on the defendant's propensity. *Id.* at 145, 787 A.2d at 1280. My conclusion is different if the State starts using additional testimonial evidence to prove the prior incidents but offers no such evidence to support the charged incident. Thus, the risk of prejudice is greater than in earlier cases where we have allowed prior-bad-act evidence as context.

¶ 28. I concur because there was no objection to the testimony of the third-party witnesses. I am explaining my position, as I did in *Hendricks*, to make clear my view that all context evidence of prior bad acts is not automatically admissible in domestic violence cases. The trial courts must carefully examine the probative value of such evidence in relation to the danger of unfair prejudice, as Rule 403 requires, before deciding whether to admit the evidence.

¶ 29. I am authorized to state that Justice Johnson joins this concurrence.