**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     23-AP-289

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,  2024

State of Vermont v. Jeffrey Rivard\*

}   APPEALED FROM:
}
}   Superior Court, Windham Unit,
}   Criminal Division
}   CASE NO. 1370-11-19 Wmcr
     Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Defendant appeals his conviction by a jury of domestic assault. We affirm.

In November 2019, defendant was charged with one misdemeanor count of domestic assault based on allegations that he threw items at his wife, grabbed her arm and neck, and kicked her, causing her pain. Prior to trial, the State notified defendant of its intent to introduce evidence of prior bad acts pursuant to Vermont Rule of Evidence 404(b). Specifically, the State sought to introduce evidence that (1) in March 2012, defendant struck his wife's arm with a Wiffle bat several times; (2) in July 2015, defendant shoved his wife's head with his head; and (3) in November 2017, defendant shoved his wife in the chest, pushing her into the bedroom and blocking her access to the kitchen. Each of these incidents had resulted in criminal charges that were eventually dismissed.

Defendant moved to exclude the evidence, arguing that it was being offered to demonstrate propensity and was unfairly prejudicial. The State responded that the evidence was admissible to explain why defendant's wife did not report the assault herself, to negate the impression that it was an unlikely event in the context of their relationship, and to explain wife's subsequent minimization of the incident. The State also moved separately to admit a portion of the recording of the call defendant's daughter placed to 911 on the night of the charged incident as an excited utterance.

The court held a hearing on both motions prior to trial. The court stated at the hearing that it viewed the 911 recording as admissible, but that defendant could object at trial. The court subsequently issued a written order holding that the evidence of the 2012 and 2017 conduct was admissible to put the charged incident into context and to assess the credibility of wife's testimony, and that its probative value outweighed its prejudicial effect. The court excluded the 2015 incident because the facts of that event were ambiguous and could be confusing or distracting to the jury.

At the start of trial, the State played the 911 recording of daughter's call for the jury. Defendant did not object. The State then presented testimony from a Brattleboro police officer who responded to the 911 call. The officer testified that defendant's wife had marks on her left arm and redness on the right side of her neck that looked recent. He took pictures of the marks, which were admitted into evidence. Wife told him that her leg muscle was sore and that "her neck was a little sore and starting to feel a little pain [sic]."

Wife then testified. She stated that she and defendant had been married for sixteen years and had three children aged fifteen, eight, and twenty-three months. She did not support the prosecution against defendant and had been subpoenaed to appear. In November 2019, she and her family were staying in adjoining rooms at a motel in Brattleboro because the apartment that they had planned to rent turned out to be a scam. Wife was working evenings as a taxi driver. On the evening of the assault, she returned late from her shift because her last trip took longer than expected. She found the motel room door locked from the inside and was unable to enter. She began banging on the door. Defendant was unhappy that she had returned late and thought she should spend the night in her car.

Wife continued to bang on the door until defendant eventually let her in. He started berating her for being late, for making him get up, and for the family's lack of housing. She unsuccessfully tried to calm him down by snuggling him and telling him that she loved him. He began throwing medication bottles at her. She then turned on the light, which further upset him. He grabbed her arm and the edge of her neck, hurting her. She thought he was trying to put her head into the wall. She screamed and fought to escape his grip. She then locked herself in the bathroom. Her oldest daughter came and asked if wife was okay. Wife responded that she was fine and that they were "just having a rough night." Husband then started knocking on the bathroom door, pulled it open, and kicked her leg. Wife screamed, which caused daughter to call the police. Wife testified, "that's our normal protocol if the kids don't feel that Dad's being safe."

Wife asserted that the kick was unintentional, that she was highly emotional, and that her reactions were disproportionate. She also stated that defendant hurt her arm and left scratches when he grabbed her, and that her leg hurt when police arrived. She conceded that she was scared when the attack occurred.

Wife then testified about the 2012 and 2017 incidents. She stated that defendant had mental-health issues. In March 2012, his medications were not working and there were "a variety of home incidences that were quite triggering to him." He picked up a Wiffle bat while she was loading the dishwasher and hit her repeatedly on the arm. In November 2017, defendant pushed her to the ground during an argument. She testified that prior to that incident, he had recently changed medications and had not slept well, and that she didn't know if he pushed her "so much as I might have lost my footing in the process."

The court asked defense counsel if he wanted a cautionary instruction to the jury regarding wife's testimony about the 2012 and 2017 acts. Defense counsel indicated that he did not think it was necessary to give the instruction at that time. Defense counsel subsequently declined to have a cautionary instruction given during the jury charge.

The jury found defendant guilty of domestic assault. The court subsequently imposed a suspended sentence of six-to-twelve months. This appeal followed.

Defendant first argues that the trial court erred in admitting wife's testimony about the 2012 and 2017 assaults. He contends that the testimony was offered to show his propensity for criminal behavior and was inherently prejudicial.

Vermont Rule of Evidence 404(b) provides that evidence of prior bad acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." A court "may admit such evidence if it is genuinely relevant and material to an issue in the case, and its probative value is not substantially outweighed by the danger of unfair prejudice." State v. Williams, 2010 VT 77, ¶ 12, 188 Vt. 405 (quotation omitted). "Trial courts have broad discretion to admit evidence of a defendant's prior bad acts, and we will reverse such a decision only when we find an abuse of discretion resulting in prejudice." State v. Longley, 2007 VT 101, ¶ 15, 182 Vt. 452.

In domestic-assault cases, prior bad acts may be admissible to "plac[e] the charged offense in 'context' in order to provide the jury an understanding of the victim's behavior that might otherwise appear to be incongruous." Williams, 2010 VT 77, ¶ 10; see also State v. Laprade, 2008 VT 83, ¶ 22, 184 Vt. 251 (upholding admission of evidence of prior assaults as relevant to explain why victim did not call police when she repeatedly saw defendant near her home after charged incident). We have stated that "[p]revious incidents of domestic abuse are also relevant to put the victim's recantation of prior statements into context for the jury." State v. Sanders, 168 Vt. 60, 63 (1998). "Our decisions do not, however, mean that prior bad acts—even by the same defendant against the same domestic-assault victim—are automatically admissible." Williams, 2010 VT 77, ¶ 10. The State retains the burden of demonstrating that the evidence is relevant and not unfairly prejudicial. Id.

We conclude that the State met its burden in this case. The evidence of the 2012 and 2017 assaults was relevant "to show the nature of the parties' relationship and explain what might otherwise appear to be incongruous behavior to a jury," including wife's failure to call the police herself after defendant hurt her, her unwillingness to cooperate with the prosecution, the difference between the pain levels she reported to police and at trial, and her attempts to minimize defendant's behavior by asserting that it was caused by medication issues or was her own fault. Williams, 2010 VT 77, ¶ 10; see also Sanders, 168 Vt. at 63 (explaining that "[v]ictims of domestic abuse are likely to change their stories out of fear of retribution, or even out of misguided affection," and "prior history of abuse gives the jury an understanding of why the victim is less than candid in her testimony and allows them to decide more accurately which of the victim's statements more reliably reflect reality").

Defendant argues that the court should have waited to determine the admissibility of the prior-bad-acts evidence until trial, because wife's testimony provided the jury with sufficient information to understand their relationship, making the evidence unnecessary. The court acted consistently with court rules in ruling on defendant's motion to exclude the evidence prior to trial. See Reporter's Notes, V.R.E. 404 ("Because of the likelihood that evidence of prior crimes will have a great impact on the jury, it is important that the court rule on admissibility out of the hearing of the jury and preferably before the trial."); V.R.Cr.P. 26(c) (requiring State to provide notice of intent to offer prior bad acts evidence at least thirty days prior to trial). Defendant did not renew his objection to the evidence at trial and declined the court's offer to give the jury a cautionary instruction. And, while wife's testimony about defendant's mental illness, previous homelessness, history of panic attacks, and difficulty with medications may have explained some

of defendant's behavior, it did not explain why wife and her children continued to live with defendant, wife did not call the police, and wife declined to cooperate with the prosecution. The evidence was relevant to explain these issues.[1]

Further, the trial court's order shows that the court balanced the prejudicial nature of the evidence against its probative value and concluded that the latter outweighed the former because the evidence would allow the jury to understand that wife found defendant's conduct to be normal. The court acted within its discretion in so concluding. See Longley, 2007 VT 101, ¶ 18 (explaining that trial court's discretionary ruling will be upheld if record shows that court engaged in balancing test and exercised discretion under V.R.E. 403).

Defendant's other claim on appeal is that the court erred in admitting a portion of the recording of the call that daughter made to police on the night of the charged incident. In the recording, daughter was at first calm, but as she began to say why she was calling, her voice began to quiver, and she started crying when she told the dispatcher that her father was sick and was not taking his medications. The dispatcher asked daughter to take a deep breath and asked her what was going on. Daughter replied that defendant "hurt my mom." When the dispatcher subsequently asked if he was still being violent toward her mom, defendant's daughter said no.

Defendant argues that it was plain error for the court to admit daughter's statement that he hurt wife because the statement was testimonial in nature.[2] "Plain error consists of glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." Kandzior, 2020 VT 37, ¶ 23.

The admission of an out-of-court statement violates a defendant's right to confrontation if the statement was testimonial, the declarant is unavailable to testify at trial, and the defendant had no prior opportunity for cross-examination—even if the statement would be admissible under an exception to the hearsay rule. State v. Alers, 2015 VT 74, ¶ 7, 199 Vt. 373. In determining whether a statement is testimonial, "the proper inquiry is whether the elicited statements were necessary to enable the police to resolve the present emergency, or rather were intended to adduce what had happened in the past." Id. ¶ 9 (quotation and alteration omitted). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 822 (2006). For this reason, "[a] 911 call, . . . and at least the initial interrogation conducted in

---

[1] Defendant asserts that the prosecutor impermissibly emphasized the prior-act evidence and essentially asked the jury to consider it as proof of propensity. To the extent that this is a separate claim of error, we decline to reach it because defendant did not object below to the prosecutor's comments. See State v. Lampman, 2011 VT 50, ¶ 33, 190 Vt. 512 (mem.) (declining to address unpreserved argument where defendant did not argue plain error on appeal).

[2] The State argues that defendant waived this argument at the pretrial hearing. While defense counsel's statements could be interpreted as conceding that the statement was nontestimonial, he indicated that he was not prepared to make a full argument regarding this issue and asked to reserve his right to object. He did not stipulate to the admission of the evidence. Defense counsel's statements were ambiguous and insufficient to demonstrate an "intentional relinquishment or abandonment of a known right." State v. Kandzior, 2020 VT 37, ¶ 17, 212 Vt. 260 (quotation omitted).

connection with a 911 call, is ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance." Id. at 827 (quotation omitted); see also State v. Wilkinson, 2005 VT 46, ¶ 9, 178 Vt. 174 (listing "a domestic assault victim's call to a 911 operator" as example of nontestimonial statement).

We conclude that the court did not commit plain error in admitting daughter's statements. Although the assault had already occurred, daughter reported that defendant was very sick and in mental distress. The dispatcher's questions to daughter were intended to determine whether defendant posed a continuing threat and what type of assistance was needed. See State v. Shea, 2008 VT 114, ¶ 14, 184 Vt. 453 (explaining emergency may be ongoing even if crime is not still in progress if "the victim or an officer is in danger, either because he or she needs emergency medical attention or because the defendant poses a threat"). The informal nature of the questions further supports our conclusion that the questioning was targeted at resolving the ongoing emergency rather than gathering information for a future prosecution, and therefore defendant's daughter's responses were nontestimonial. Defendant does not challenge the court's conclusion that the statement was otherwise admissible as an excited utterance under Vermont Rule of Evidence 803(2). Accordingly, we see no basis to disturb the conviction.

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice

5