Filed  05/22/25

| | | |
|---|---|---|
| VERMONT SUPERIOR COURT |  | CIVIL DIVISION |
| Washington Unit | | Case No. 465-8-16 Wncv |
| 65 State Street | | |
| Montpelier VT  05602 | | |
| 802-828-2091 | | |
| www.vermontjudiciary.org | | |

---

Duran vs. Mad River Medical Center et al

---

### Opinion and Order on Motions *In Limine* 29, 30, 31, 32, 33, and 34, and Cross-Motion *In Limine* (filed May 19, 2025)

Plaintiff claims that Ms. Patricia Duran sought treatment at Mad River Medical Center on August 5, 2014; she was in adrenal crisis; the nurse practitioner who treated her did not recognize that she was in adrenal crisis; Ms. Duran was not treated for adrenal crisis or referred elsewhere for such treatment; and she died the next day as a result.  The claims remaining in the case are for wrongful death, medical malpractice, negligent supervision, and lack of informed consent.  Trial is set to begin on May 27, 2025.  The parties have filed several motions seeking numerous *in-limine* rulings.  The Court determines as follows.

1.     Testimony of Dr. Nanos Regarding Dr. Cook

Ms. Duran was seen at the Mad River Medical Center by Ms. Deborah Van Dyke, who was practicing as a nurse practitioner subject to a "collaboration agreement" with Dr. Cook, who had no direct or indirect involvement with Ms. Duran's treatment. Defendants anticipate that one of Plaintiff's experts, family medicine practitioner Dr. Nanos, will opine as to Dr. Cook's training and supervisory obligations under the collaboration agreement with Nurse Van Dyke, that he breached them, and that the breach contributed to Ms. Duran's death.

Order
465-8-16 Wncv Duran vs. Mad River Medical Center et al

Page **1** of **10**

Defendants argue that Dr. Nanos lacks any background or expertise in such collaboration agreements, and any such testimony should be foreclosed for that reason alone under Vt. R. Evid. P. 702 and *Daubert* principles.

Vt. R. Evid. 702 allows for the admission of expert opinions that reflect "scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue." The testimony must be based on sufficient facts or data, and the product of reliable principles and methods that are applied reliably to the facts of the case by the expert witness. *Id.* Expert testimony must also be both relevant and reliable. *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 589 (1993).

The Court plays a "gatekeeping" role, screening expert testimony to ensure that it is reliable and helpful to the issue at hand. *USGen New England, Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 19, 177 Vt. 193, 201–02. The non-exclusive list of factors that a court may consider regarding a request to preclude expert testimony includes: "(1) whether the theory or technique involved is capable of being tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate associated with the scientific technique; and (4) whether the theory or technique has been generally accepted in the scientific community." *State v. Pratt*, 2015 VT 89, ¶ 17 (citing *State v. Streich*, 163 Vt. 331, 343 (1995)).

The Court's primary goal in this context is to ensure that the evidence is "properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702, Advisory Committee's note to 2000 amendments. Indeed, our High Court has "focused on the 'liberal thrust' of Rule 702, stating that 'the trial court's inquiry into expert testimony should primarily focus on excluding 'junk science'—because of its

Order
465-8-16 Wncv Duran vs. Mad River Medical Center et al

Page **2** of **10**

potential to confuse or mislead the trier of fact—rather than serving as a preliminary inquiry into the merits of the case." *Pratt*, 2015 VT 89, ¶¶ 18–19. "So long as scientific or technical evidence has a sound factual and methodological basis and is relevant to the issues at hand, it is within the purview of the trier of fact to assess its credibility and determine the weight to be assigned to it." *Id.* at ¶ 30; *see 985 Associates, Ltd. v. Daewoo Electronics America, Inc.*, 2008 VT 14, ¶ 16, 183 Vt. 208, 217–18 (cautioning trial courts against misusing the reliability prong of the *Daubert* analysis to deny parties the opportunity of presenting their expert evidence to the trier of fact).

No doubt, an expert in one field cannot offer testimony in other fields without some evidence to establish that the expert is knowledgeable in the other field. *See Nimely v. City of New York*, 414 F.3d 381, 399 (2d Cir. 2005); *Lytle v. Ford Motor Co.*, 814 N.E.2d 301, 308 (Ind. Ct. App. 2004); *Ross v. Epic Eng'g*, PC, 307 P.3d 576, 581 (Utah Ct. App. 2013); *Cf. Trombly Plumbing & Heating v. Quinn*, 2011 VT 70, ¶ 14, 190 Vt. 552, 555-56 (mem.) (homeowners lacked sufficient expertise to opine as to extent of damages to house). But an expert witness need only possess "skill, knowledge, and experience above and beyond that of the average juror." *State v. White*, 142 Vt. 73, 77 (1982). Where the witness has such general expertise and applies it reasonably to the facts at issue, any deficiency in the expert's background or knowledge is typically a matter that will go to the weight of the opinion, not whether it is admissible at the threshold.

In *985 Assocs.*, Ltd., for example, the Supreme Court considered whether to preclude a fire expert from testifying that a microwave oven was the source of a fire because he had no particular expertise concerning the workings of microwave ovens. The

Court permitted the opinion based on the expert's general knowledge of the nature of fires and their properties. In so holding, the Court stated:

> As we have noted, "there are no certainties in science." *State v. Streich*, 163 Vt. 331, 343, 658 A.2d 38, 47 (1995). So long as scientific or technical evidence has a sound factual and methodological basis and is relevant to the issues at hand, it is within the purview of the trier of fact to assess its credibility and determine the weight to be assigned to it. *See Brooks*, 162 Vt. at 31, 643 A.2d at 229. The trial court should have allowed the adversarial process to draw out any deficiencies in the expert testimony, rather than usurping the jury's function by excluding expert testimony that met the standards articulated in *Daubert* and adopted by this Court. *See Daubert*, 509 U.S. at 596, 113 S.Ct. 2786 (expert testimony can be attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof").

*985 Assocs., Ltd.*, 2008 VT 14, ¶¶ 15-16, 183 Vt. at 217–18.

The Court understands that the anticipated testimony will be to the effect that the collaboration agreement required Dr. Cook to perform certain consultative or supervisory functions, he did not, and that contributed to the outcome in this case. The Court is not persuaded that Dr. Nanos is incompetent to so opine. She is board certified in family medicine and has substantial experience in the primary care setting. If there are deficiencies in her knowledge of how the specific type of collaboration agreement, or its specific requirements, reasonably are intended to operate, Defendants can confront that on cross or with countervailing testimony.

2. <u>Testimony of Dr. Nanos and Nurse Paschall as to Treatment in the ER</u>

Defendants anticipate that Dr. Nanos and Nurse Paschall, Plaintiff's other expert, may be called upon to testify as to what would have happened in the emergency room if Ms. Duran had been sent there. They argue that neither witness has any substantial background or expertise in emergency room medicine, and they should not be permitted

to testify as to what would have happened on August 5 if Ms. Duran had been referred to the ER.

The Court understands that the anticipated testimony is that there is a straightforward and well-known standard of care for the sort of adrenal crisis Ms. Duran allegedly was suffering, and that had she been referred for treatment in the ER, it would have been provided because ER providers would have been readily familiar with it.

Defendants are free to contest such evidence. As noted above, however, the mere fact that Dr. Nanos and Nurse Paschall are not specifically ER professionals by trade is insufficient in these circumstances to demonstrate that they lack sufficient expertise to offer their opinions.

3.     Testimony of Dr. Nanos as to What Dr. Cook Would Have Done

Defendants anticipate that Dr. Nanos may be called upon to testify as to what Dr. Cook would have done had he become aware of Ms. Duran and her condition on August 5. No such testimony should be permitted, Defendants argue, because Dr. Nanos lacks any knowledge as to Dr. Cook's qualifications or expertise to treat someone in adrenal crisis.

Again, the Court understands that the testimony will be that there was a straightforward and well-known standard of care, and that Dr. Cook, had he been consulted, should have provided that treatment (or advised that it be provided) or, lacking sufficient knowledge or expertise, should have referred Ms. Duran to the ER to receive that treatment. What Dr. Cook actually would have done is not the point. The Court sees no basis for excluding this testimony.

4. <u>Introduction of Certain Deposition Transcripts</u>

According to Defendants, Plaintiff has indicated that the deposition transcripts of Nurse Van Dyke, Dr. Cook, and Dr. Stinnett-Donnelly are included within his potential exhibit list. Without describing what use of those transcripts Defendants think Plaintiff intends to make, Defendants request an order barring any use of their transcripts in any manner not permitted by Vt. R. Civ. P. 32(a) or the Vermont Rules of Evidence. In response, Plaintiff indicates that the transcripts (if used) will be used in compliance with Rule 32. It is wholly unclear whether there is any actual controversy as to the transcripts.

Deposition transcripts will be used in accordance with Vt. R. Civ. P. 32 and the Vermont Rules of Evidence.

5. <u>Testimony From Certain Witnesses as to Wrongful Death Damages</u>

Defendants request that Linda Duran, Kelley Duran, Patrick Duran, and Michael Duran Jr. (decedent's nephew) be barred from testifying as to wrongful death damages. They argue that 14 V.S.A. § 1492(b) limits damages to a spouse and next of kin, and these witnesses are neither. The only next of kin in this case is Michael Duran Sr., decedent's brother. Plaintiff responds that there is no basis for limiting who can testify as to wrongful death damages merely because Mr. Duran is the sole statutory taker.

Defendants are correct that Brother Duran's loss is the key fact to be determined as regards wrongful death damages. The Court cannot determine in a vacuum, however, whether the relationships Ms. Duran had with others may have some relevance in assessing the quality of Mr. Duran's relationship with her and the harm he may have suffered from losing that relationship. The Court does provide the following guidance:

the focus of testimony of Mr. Duran and others should be the relationship of Mr. Duran and Ms. Duran and the impact of her death upon him. If testimony of others strays too far from that north star and delves into relationships with third parties, objections can be made at trial. Lengthy examinations of such third-party relationships may distract the jury from its true goal, which is to analyze Mr. Duran's loss. Such determinations cannot be made at this juncture, however. Vt. R. Evid. 403; *see State v. Williams*, 2010 VT 77, ¶ 11, 188 Vt. 405, 410–11 (pointing out dangers of making pretrial evidentiary rulings and noting need to await the development of trial evidence to make some determinations).

6.      Expert Testimony From Dr. Stinnett-Donnelly

Defendants request that Dr. Stinnett-Donnelly not be permitted to provide any *expert* testimony. They represent that he is an associate chief medical information officer for the University of Vermont Health Network, and he was voluntarily deposed in this case to explain the capabilities of Mad River Family Practice's former recordkeeping software and the impact on stored data when the new software was employed, matters obviously not within the ordinary knowledge of jurors. Defendants generally represent that Dr. Stinnett-Donnelly is *not* a fact witness and Plaintiff never disclosed him as such.

Plaintiff does not dispute that Dr. Stinnett-Donnelly was never disclosed as an expert. He asserts, however, that Dr. Stinnett-Donnelly is purely a "percipient" fact witness, by which the Court presumes he means that only "layperson" testimony is anticipated. Plaintiff does not indicate, however, what the percipient fact testimony may be. He merely asserts: "Dr. Stinnett-Donnelly has personal knowledge of the location and state of the medical records."

Dr. Stinnett-Donnelly was never disclosed as an expert anticipated to provide "testimony under Vermont Rules of Evidence 702, 703, or 705," and he may provide no such testimony. Vt. R. Civ. P. 26(5)(A)(i)(I). Indeed, Rule 26 was amended in 2019 to make clear that experts who are also "fact witnesses" still need to be disclosed. To the extent that there is any controversy as to whether expert testimony may be offered under the guise of layperson testimony, the matter may be raised at trial. The Court cannot resolve that issue pretrial without knowing what the testimony is. Otherwise, see Issue 7 below.

7.      Testimony or Argument as to Sufficiency of Discovery

Defendants anticipate that Plaintiff intends to introduce evidence related to the sufficiency of document production during discovery.

Discovery disputes have been presented to the Court in this case, and they have been decided. At this point, discovery is over. The Court sees no obvious role for such evidence at trial.

Defendant raised this issue, however, after the Court's deadline for motions *in limine,* and Plaintiff has yet to respond. To the extent it is opposed, the Court will discuss the motion with counsel at 8:30 a.m. on the first day of trial.

8.      "Bad Cough" Versus "Bad Tooth"

A medical record indicates that Ms. Duran was seen at Mad River Family Practice for "vertigo and bad cough." Plaintiff anticipates that Defendants will attempt to provide evidence or argument to the effect that "bad cough" was electronically entered in error, as either misheard or mistyped by the receptionist, and should have been "bad tooth." Ms. Duran was in fact treated on August 5 for an infected tooth. Plaintiff argues that

there is no witness who could properly provide any such testimony because the receptionist professes to have no memory of it.

Defendants express no interest in offering such testimony or argument, but they wish to retain the right to explore the matter if it does come up in testimony.

This request is granted as framed. Neither party has discussed whether Ms. Duran actually had a cough or whether a cough is potentially indicative of one type ailment as opposed to another. To the extent there is a basis to explore the entry at trial, the bounds of such exploration will need to be addressed at that time.

9.      Comparative or Contributory Negligence

Plaintiff requests that the Court bar any evidence or argument of comparative or contributory negligence. He argues that there is no such evidence. Defendant has not opposed the motion. It is granted.

10.      Michael J. Duran Jr.'s Membership With Law Firm

Plaintiff asks the Court to bar any evidence or argument related to the fact that Michael Duran Jr., Ms. Duran's nephew, is a member of the principal law firm representing Plaintiff, ostensibly because such evidence or argument is irrelevant or immaterial and would be prejudicial.

Defendants argue that Mr. Duran is a fact witness in relation to certain central issues in the case, he had contact with certain witnesses or experts, and the jury should learn of the extent to which he may be partial or interested in the outcome of the case to properly assess his credibility.

This request is denied. The Court will not foreclose reasonable inquiry into potential bias or interest on the part of Mr. Duran. "Bias is always relevant in assessing

a witness's credibility." *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999); *see also Abernathy v. E. Illinois R.R. Co.*, 940 F.3d 982, 992 (7th Cir. 2019) ("We have held repeatedly that parties should be granted reasonable latitude in cross-examining witnesses for bias."); *United States v. Fields*, 763 F.3d 443, 464 (6th Cir. 2014) ("A court abuses its discretion when a party is not permitted 'reasonable latitude' to develop facts tending to demonstrate that the testimony-in-chief is biased and 'sufficient independent evidence of bias is not available to the jury.'" (citation omitted)).

Electronically signed on May 22, 2025, per V.R.E.F. 9(d).

Timothy B. Tomasi
Superior Court Judge

Order
465-8-16 Wncv Duran vs. Mad River Medical Center et al

Page **10** of **10**